MURIEL CALLOW *vs.* FREDERICK THOMAS.

Middlesex.     December 4, 1947. — April 1, 1948.

Present: QUA, C.J., LUMMUS, DOLAN, WILKINS, & SPALDING, JJ.

*Husband and Wife. Marriage and Divorce,* Annulment. *Actionable Tort.*

An action at law, commenced after an annulment for fraud of a marriage between the plaintiff and the defendant, could not be maintained for personal injuries sustained in this Commonwealth during the period of the supposed marriage and caused by gross negligence of the defendant in the operation of a motor vehicle.

Discussion by SPALDING, J., of the nature and effect of an annulment of marriage.

TORT. Writ in the Superior Court dated August 29, 1945. The action was reported by *Pinanski,* J.

*M. H. Golburgh,* (*J. Finks* with him,) for the plaintiff.

*K. C. Parker,* for the defendant.

SPALDING, J. The plaintiff and the defendant were married in this Commonwealth on August 6, 1944, and thereafter lived together here as husband and wife. On November 9, 1944, while riding as a "gratuitous passenger" in an automobile owned and operated by the defendant, the

plaintiff was injured when the automobile, due to the gross negligence of the defendant, ran into a tree. The plaintiff was in the exercise of due care. The accident occurred on a public way in this Commonwealth and the defendant's automobile was registered in accordance with the laws thereof. On June 28, 1945, upon the petition of the plaintiff to annul the marriage because of the defendant's fraud, the Probate Court decreed that the marriage was "null and void."[1] Two months later the plaintiff commenced this action of tort to recover compensation for her injuries.

The foregoing facts were submitted to a judge of the Superior Court upon a case stated in which it was agreed that no inferences should be drawn. See G. L. (Ter. Ed.) c. 231, § 126. The judge at the request of the parties reported the case to this court without decision (G. L. [Ter. Ed.] c. 231, § 111; *Scaccia* v. *Boston Elevated Railway*, 317 Mass. 245, 248–249) "upon the stipulation that if the plaintiff is entitled to recover, judgment shall be entered for the plaintiff in the sum of $3,000, otherwise judgment for the defendant."

The question for decision is whether a wife after the marriage has been annulled can maintain an action against her former husband for a tort committed during coverture. The question is one of first impression in this Commonwealth. Indeed no case in any other jurisdiction has been brought to our attention, and we have found none, in which this question has been presented.

That no cause of action arises in favor of either husband or wife for a tort committed by the other during coverture

---

[1] The material portions of the decree are as follows: "On the libel of Muriel Gladys Thomas, of Sudbury, in said county of Middlesex, representing that she and Frederick A. Thomas, now of Lexington, in said county, were joined in marriage lawfully solemnized at Boston, in the county of Suffolk, on August 6, 1944; and that they last lived together in this Commonwealth at said Sudbury; that she now doubts the validity of said marriage for the reason that at the time of said marriage said libellee fraudulently concealed from her the fact that he was afflicted with a contagious disease, thereby practicing a fraud upon her: and praying that said marriage between the said libellant and libellee be annulled and declared void: Said Frederick A. Thomas having had due notice of said libel, objection being made, and after hearing, it appearing to the court that said libellant entered into said marriage in good faith but that said libellee practiced a fraud upon her: It is decreed that said marriage between the said libellant and libellee be and the same hereby is declared to be null and void."

is too well settled to require citation of authority. Recovery is denied in such a case not merely because of the disability of one spouse to sue the other during coverture, but for the more fundamental reason that because of the marital relationship no cause of action ever came into existence.[1] That this is so is revealed by the fact that it has uniformly been held that even after divorce no action can be maintained by either spouse for a tort committed by the other during coverture. *Phillips* v. *Barnet*, 1 Q. B. D. 436. *Abbott* v. *Abbott*, 67 Maine, 304. *Bandfield* v. *Bandfield*, 117 Mich. 80. *Strom* v. *Strom*, 98 Minn. 427. *Lillienkamp* v. *Rippetoe*, 133 Tenn. 57. *Schultz* v. *Christopher*, 65 Wash. 496. There is nothing in our statutes enlarging the rights of married women that can be construed as altering this rule.[2] See *Lubowitz* v. *Taines*, 293 Mass. 39; *Luster* v. *Luster*, 299 Mass. 480, 482–483. Recognizing the common law rule and the fact that it has not been changed by statute, the plaintiff argues that the decree of nullity "effaced the marriage between the plaintiff and defendant ab initio, and, therefore, at the time of the accident the relationship of husband and wife did not exist."

General Laws (Ter. Ed.) c. 207, § 14, which governs proceedings for annulment, so far as material, reads as follows: "If the validity of a marriage is doubted, either party may

---

[1] There are, to be sure, instances where one spouse may have a cause of action against the other but cannot enforce it because of the rule prohibiting, with certain exceptions, legal proceedings between husband and wife. See G. L. (Ter. Ed.) c. 209, § 6. Thus in *Giles* v. *Giles*, 279 Mass. 284, it was held that a wife could not maintain a suit in equity against her husband to recover money lent to him before the marriage. But after the parties had been divorced it was held that the suit could be maintained. *Giles* v. *Giles*, 293 Mass. 495. The right to sue was merely suspended during coverture. In *Charney* v. *Charney*, 316 Mass. 580, it was held that a wife who, without the intervention of a trustee, had entered into a separation agreement with her husband in New York could not, although the contract was valid by the law of that State, enforce the agreement in the courts of this Commonwealth. Compare *Whitney* v. *Whitney*, 316 Mass. 367. See *Lubowitz* v. *Taines*, 293 Mass. 39; *Mertz* v. *Mertz*, 271 N. Y. 466.

[2] In other jurisdictions it has usually been held that statutes removing the common law disabilities of the wife do not permit her to maintain an action against her husband for a tort committed during coverture. *Libby* v. *Berry*, 74 Maine, 286. *Bandfield* v. *Bandfield*, 117 Mich. 80. *Strom* v. *Strom*, 98 Minn. 427. *Longendyke* v. *Longendyke*, 44 Barb. S. C. 366. *Lillienkamp* v. *Rippetoe*, 133 Tenn. 57. *Thompson* v. *Thompson*, 218 U. S. 611. But some statutes have been construed to permit actions in such cases. *Johnson* v. *Johnson*, 201 Ala. 41. *Brown* v. *Brown*, 88 Conn. 42. *Gilman* v. *Gilman*, 78 N. H. 4. See note in 38 Harv. L. Rev. 383.

file a libel for annulling such marriage . . . . Upon proof of the validity or nullity of the marriage, it shall be affirmed or declared void by a decree of the court." In general it may be said that an annulment is to be distinguished from a divorce in that it is not a dissolution of the marriage but is a judicial declaration that no marriage has ever existed. In other words, the decree of annulment makes the marriage void ab initio. Restatement: Conflict of Laws, § 115 (1), comment b. *Clerke* v. *Menzies,* [1922] 2 Ch. 298. *Dodworth* v. *Dale,* [1936] 2 K. B. 503, 511. *Mason* v. *Mason,* [1944] N. I. 134. *Millar* v. *Millar,* 175 Cal. 797, 804–805. *McDonald* v. *McDonald,* 6 Cal. (2d) 457, 461. *Griffin* v. *Griffin,* 130 Ga. 527. *Henneger* v. *Lomas,* 145 Ind. 287, 298. *Ridgely* v. *Ridgely,* 79 Md. 298, 305. *Steerman* v. *Snow,* 94 N. J. Eq. 9, 13–14. *Jones* v. *Brinsmade,* 183 N. Y. 258. *Leventhal* v. *Liberman,* 262 N. Y. 209, 211. See *Loker* v. *Gerald,* 157 Mass. 42, 45; *Hanson* v. *Hanson,* 287 Mass. 154, 157. And this is true even though, as here, the marriage be only voidable at the instance of the injured party. *Dodworth* v. *Dale,* [1936] 2 K. B. 503, 511–512. *Mason* v. *Mason,* [1944] N. I. 134. *McDonald* v. *McDonald,* 6 Cal. (2d) 457, 461. *Matter of Moncrief,* 235 N. Y. 390. *Sleicher* v. *Sleicher,* 251 N. Y. 366, 369.

But the doctrine that such a decree makes the marriage void ab initio has not always been applied unqualifiedly. See *Sleicher* v. *Sleicher,* 251 N. Y. 366, 369. [1] In England, where the question of the effect of a decree of annulment seems to have been considered to a greater extent than in this country, the rule is that such a decree makes the marriage void for most purposes but not for all. In discussing the effect of such a decree in *Mason* v. *Mason,* [1944] N. I. 134, it was said by Lord Chief Justice Andrews, "It is fur-

---

[1] In that case the defendant was directed by a decree of divorce to pay alimony to the plaintiff "so long as she remains unmarried." Thereafter the plaintiff remarried but the marriage was subsequently annulled on the ground of fraud. Alimony payments ceased at the time of the second marriage. In an action to recover unpaid instalments of alimony it was held that the plaintiff could recover instalments of alimony falling due from the time of the annulment but not for the period during which the second marriage was in force. The court refused to give retroactive effect to the decree of annulment, saying, "The retroactive effect of rescission from the beginning is not, however, without limits, prescribed by policy and justice."

ther to be observed that the marriage, after such decree absolute, is void for almost every purpose; and, speaking in general terms, the only exception to the rule — an exception founded on general equitable principles — may be said to be such transactions as have been concluded and such things as have been done during the period of the supposed marriage. These cannot be undone or re-opened after the marriage has been declared null and void" (page 163).

This exception has been recognized in several decisions. Thus in *Anstey* v. *Manners*, Gow, 10, the plaintiff, after a sentence of nullity had been pronounced by the Ecclesiastical Court, brought suit against the former husband to recover for necessaries which he (the plaintiff) had supplied to the wife. Some of the necessaries were supplied during the supposed marriage and some were supplied afterwards. In a very brief opinion which is somewhat obscure it was held that the defendant was not liable for debts contracted after the date of the decree. The case has been considered as impliedly holding that the defendant was liable for necessaries furnished prior to that date. See *Dodworth* v. *Dale*, [1936] 2 K. B. 503, 512.

In *Dunbar* v. *Dunbar*, [1909] 2 Ch. 639, it was held that a completed and executed transaction, namely, an advancement, effected while the plaintiff and the defendant were living together as man and wife, was unaffected by a subsequent decree annulling a marriage which was voidable but not void.

In *Dodworth* v. *Dale*, [1936] 2 K. B. 503, it was held that a husband, who had obtained an annulment of his marriage on the ground of his wife's impotency and who during the period of his purported marriage had filed tax returns as a married man, could not be compelled to pay additional taxes for that period on the ground that the deductions which he had taken for the support of his wife were improper. The court stated "that what has been done during the continuance of the de facto marriage cannot be undone — cannot be overturned by the operation of law" (page 519).

In *Fowke* v. *Fowke*, [1938] Ch. 774, it was held that a decree of nullity granted on the ground of the wife's im-

potency did not affect a previous deed of separation whereby the husband covenanted to pay the wife an annuity so long as she continued to lead a chaste life. See also *P.* v. *P.* [1916] 2 Ir. R. 400; *De Reneville* v. *De Reneville,* [1948] P. 100.

We are of opinion that the exception recognized in these cases is sound and that the present case falls within it. At the time of the accident the parties were husband and wife for all intents and purposes. Had no proceedings been brought to annul the marriage, this status would have endured until the marriage was terminated by death or divorce. In other words, the marriage here was voidable and not void and was valid until it was set aside by the decree of nullity. 1 Bish. Mar. Div. & Sep., §§ 258, 259, 271, 281. *Anders* v. *Anders,* 224 Mass. 438, 441. *Sleicher* v. *Sleicher,* 251 N. Y. 366, 369. It is to be observed that this is not a case of a marriage prohibited by law such as a bigamous marriage or one prohibited by reason of consanguinity or affinity between the parties. G. L. (Ter. Ed.) c. 207, §§ 1, 2, 4. Such a marriage is no marriage at all and is "void without a decree of divorce or other legal process." G. L. (Ter. Ed.) c. 207, § 8. While it doubtless is true that a decree of nullity ordinarily has the effect of making a marriage, even one which is voidable, void ab initio, this is a legal fiction which ought not to be pressed too far. To say that for all purposes the marriage never existed is unrealistic. Logic must yield to realities. Public policy requires that there must be some limits to the retroactive effects of a decree of annulment. It was said by Cardozo, C. J., in *American Surety Co.* v. *Conner,* 251 N. Y. 1, 9, "The decree of annulment destroyed the marriage from the beginning as a source of rights and duties . . . but it could not obliterate the past and make events unreal." The better rule, we think, is that in the case of a voidable marriage transactions which have been concluded and things which have been done during the period of the supposed marriage ought not to be undone or reopened after the decree of annulment. Applying that principle here, the plaintiff is not entitled to recover. On the day after the accident if the plaintiff had

brought suit against the defendant it could not have been maintained, for the marriage at that time had not been declared invalid. The situation was unaffected by the subsequent decree of annulment.

It follows that in accordance with the stipulation judgment is to be entered for the defendant.

*So ordered.*

