Coos,
No. 5475.

LILLIAN CLARK *v.* ALBERT CLARK.

Argued May 4, 1966.
Decided August 31, 1966.

*Upton, Sanders & Upton* and *William B. Cullimore* ( *Mr. Cullimore* orally ), for the plaintiff.

*Hinkley & Donovan* ( *Mr. Walter D. Hinkley* orally ), for the defendant.

KENISON, C. J. The plaintiff is the wife of the defendant and in this action she seeks damages for personal injuries caused by her husband's alleged negligence in operating a motor vehicle in which she was riding with him. The parties now and for some time previous to the accident were domiciled in Lancaster, New Hampshire. On the evening of June 26, 1964 the parties left Lancaster for Littleton, New Hampshire, intending to return to their home later that evening. This trip took them into Lunenberg, Vermont where the accident occurred.

The plaintiff moved for a pre-trial order that the substantive law of New Hampshire governs the rights of the parties. All questions of law raised by the motion were reserved and transferred without ruling by *Leahy,* C. J.

Vermont has a guest statute under which a host is liable to his automobile guest only if the injuries are caused by the "gross or wilful negligence" of the operator. 23 V.S.A. 1491. This state

has no guest statute and a guest may recover if the injuries are caused by the host's lack of ordinary care under the circumstances. *Miltimore* v. *Company,* 89 N. H. 272; *Morin* v. *Letourneau,* 102 N. H. 309. The question is whether the law of Vermont or the law of New Hampshire governs.

In years gone by the choice-of-law rule for such cases was thought to be settled and the governing law was invariably that of the place where the injury occurred. Restatement, Conflict of Laws, *ss.* 377-383 ( 1934 ); *Gray* v. *Gray,* 87 N. H. 82. Leflar, The Law of Conflict of Laws, *s.* 110 ( 1959 ). That old rule is today almost completely discredited as an unvarying guide to choice of law decision in all tort cases due in no small part to the trenchant criticism of Cheatham, Cook, Currie, Lorenzen, Stumberg and Yntema. No conflict of laws authority in America today agrees that the old rule should be retained. See e.g. texts and articles by Cavers, Ehrenzweig, Hancock, Leflar, Morris, Reese, Rheinstein, Trautman, Traynor, von Mehren and Weintraub, to mention only a few. No American court which has felt free to re-examine the matter thoroughly in the last decade has chosen to retain the old rule. *Lauritzen* v. *Larsen,* 345 U. S. 571; *Schmidt* v. *Driscoll Hotel, Inc.,* 249 Minn. 376; *Babcock* v. *Jackson,* 12 N. Y. 2d 473; *Griffith* v. *United Air Lines,* 416 Pa. 1; *Wilcox* v. *Wilcox,* 26 Wis. 2d 617; *Emery* v. *Emery,* 45 Cal. 2d 421; *Wilson* v. *Faull,* 27 N. J. 105; Restatement ( Second ), Conflict of Laws, *s.* 379 ( Tent. Draft No. 9 ). It is true that some courts, even in recent decisions, have retained it. *Shaw* v. *Lee,* 258 N. C. 609; *Landers* v. *Landers,* 153 Conn. 303 ( 1966 ). But their failure to reject it has resulted from an unwillingness to abandon established precedent before they were sure that a better rule was available, not to any belief that the old rule was a good one. The only virtue of the old rule, apart from the fact of its pre-existence, was that it was easy for a court to apply. It was easy to apply because it was a mechanical rule. It bore no relationship to any relevant consideration for choosing one law as against another in a torts-conflicts case.

This state has recognized the inadequacy of the old rule ( *Thompson* v. *Thompson,* 105 N. H. 86 ) but has up to now broken away from it only to a limited extent. *Johnson* v. *Johnson,* 107 N. H. 30; 79 Harv. L. Rev. 1707 ( 1966 ); *Dow* v. *Larrabee,* 107 N. H. 70. Like all other states whose cases are cited in the previous paragraph, we have recognized that this mechanical rule ought to be discarded, but unlike some of the other states have

been unwilling to abandon it completely until reasonably sure that a more satisfactory rule was available to take its place. Accordingly, we have used the place of wrong rule for want of a better one even though our dissatisfaction with it and with its application was evident. *Dow* v. *Larrabee,* 107 N. H. 70.

Some jurisdictions, experiencing the same dissatisfaction with the mechanical place of wrong rule, have substituted a straight characterization approach. This approach would reach different results according to whether a torts case could be technically re-characterized as a contracts case, *Levy* v. *Daniels U-Drive Auto Renting Co.,* 108 Conn. 333; as a family law case, *Haumschild* v. *Continental Cas. Co.,* 7 Wis. 2d 130; as one presenting a procedural question, *Home Ins. Co.* v. *Dick,* 281 U. S. 397, or under some other key-number section heading which would enable a court to vary its choice of law subjectively. This court prefers not to rely on such a technique because it overlooks policy considerations that should underlie choice of law adjudication. See von Mehren & Trautman, The Law of Multistate Problems 78-79 ( 1965 ).

The relevant considerations in choice-of-law decision are fairly well known. Courts and writers have identified and cited them, or most of them, down through the years, though they have not often been separately analyzed and summarized. One of the first thorough analyses of them was in Cheatham and Reese, Choice of the Applicable Law, 52 Colum. L. Rev. 959 ( 1952 ). See Yntema, The Objectives of Private International Law, 35 Can. B. Rev. 721, 734 ( 1957 ). They have been expressly taken into account in the drafting of the Restatement ( Second ), Conflict of Laws ( Tent. Draft No. 9 ) and specifically in *s.* 379, the basic tort section. Reese, Conflict of Laws and the Restatement Second, 28 Law and Cont. Probs. 679, 682 ( 1963 ). There is a difference of opinion as to the exact content of these considerations and the relative weight to be accorded different ones among them, but they are identified and knowable. We have concluded that choice-of-law decisions ought to be based directly upon these relevant considerations, rather than upon any mechanical rule or technique of *ad hoc* characterization derived indirectly from such considerations.

The relevant choice-influencing considerations can be summarized without great difficulty. Leflar, Choice-Influencing Considerations in Conflicts Law, 41 N. Y. U. L. Rev. 267, Part III and particularly *pp.* 282-304 ( 1966 ). Obviously, some of them

will be more relevant to some types of cases, less to other types. The process of applying them to particular cases will not be a subjective one. It will be typical of the judicial process in non-conflicts cases.

One of the considerations is predictability of results. It basically relates to consensual transactions, in which it is important that parties be able to know in advance what law will govern a transaction so that they can plan it accordingly. Reliance upon a predictable choice of law protects the justifiable expectations of the parties. Also, it assures uniformity of decision regardless of forum, thus discouraging "forum shopping." Except for the evils of forum shopping, the predictability consideration does not have much to do with automobile accident cases. They are not planned.

A second consideration is the maintenance of reasonable orderliness and good relationship among the states in our federal system. State chauvinism and interstate retaliation are dangers to be avoided. Any choice of law that would unduly favor one state, the forum perhaps, or interfere with easy movement from state to state, would be questionable. Open disregard of another state's clear interests might have bad effects. In terms of interstate automobile trips and accident litigation growing out of them, no more is called for under this head than that a court apply the law of no state which does not have substantial connection with the total facts and with the particular issue being litigated.

Simplification of the judicial task is another important consideration. It underlies that practice by which a court applies its own procedural rules in suits on foreign facts. It may be easier also for a court to apply its own substantive law than another state's law, because it understands its own law better and therefore can do a better job of administering justice under it. Mechanical choice of law methods, such as that the law of the place of injury always governs, also make the judicial task easier. But simplification of the judicial task is not the whole end of law, and opposing considerations may outweigh it.

A fourth consideration is inherent in the obvious fact that every court is more concerned with the advancement of its own state's governmental interests than with those of other states. Governmental interest, however, is not necessarily synonymous with domestic law. A state often has no particularly strong policy in reference to local rules of law which happen through the vagaries of legislative or judicial law-making to differ from a neighbor's

view. Strong policy concerns can underlie local rules, and they sometimes do, but often they do not. In most private litigation the only real governmental interest that the forum has is in the fair and efficient administration of justice, which is usually true of automobile accident cases.

Finally, a fifth consideration, too often disguised, is the court's preference for what it regards as the sounder rule of law, as between the two competing ones. Professor Cavers has for years been pointing out that in choice-of-law cases courts have the opportunity to make, and do make, a choice between rules of law, as distinguished from the choice between jurisdictions that they have traditionally purported to make in conflicts cases. Cavers, The Choice of Law Process 9, 79 ( 1965 ); Cavers, Re-Stating the Conflict of Laws: The Chapter on Contracts, XXth Century Comparative and Conflicts Law 349, 350, 358 ( 1961 ). We prefer to apply the better rule of law in conflicts cases just as is done in nonconflicts cases, when the choice is open to us. If the law of some other state is outmoded, an unrepealed remnant of a bygone age, "a drag on the coat-tails of civilization," ( Freund, Chief Justice Stone and the Conflict of Laws, 59 Harv. L. Rev. 1210, 1216 ( 1946 ), we will try to see our way clear to apply our own law instead. If it is our own law that is obsolete or senseless ( and it could be ) we will try to apply the other state's law. Courts have always done this in conflicts cases, but have usually covered up what they have done by employing manipulative techniques such as characterization and renvoi. Morse, Characterization: Shadow or Substance, 49 Colum. L. Rev. 1027 ( 1949 ).

After this review of the relevant choice-influencing considerations, application of them in the present case becomes not unduly difficult, and a lawyer advising these parties — either the plaintiff or the defendant, or insurance company — after the accident could anticipate with reasonable certainty that the law suit would be brought in a New Hampshire court under New Hampshire law. Predictability of legal results in advance of the event is largely irrelevant, since automobile accidents are not planned. The expectations of the present parties, if they had any, as to legal liabilities and insurance coverage for accidents, would be with reference to their own state, and they would think in terms of lawsuits brought in New Hampshire courts under New Hampshire law, if they thought about the matter at all.

Maintenance of interstate orderliness presents no problems, one way or the other. Interstate travel by residents of the two states will not be affected, nor will the sensibilities of either state, whichever law is applied.

Simplification of the court's task is almost irrelevant here too. We are accustomed to applying our own ordinary negligence rule, and our judges could administer a trial under it a bit more confidently than under Vermont's gross-negligence rule, but they could with relative ease use either rule.

As to New Hampshire's governmental interests, it is our duty to further them. We in this instance believe in our own law. Our negligence rule is common law, made by this court, and our Legislature more than once has refused to change it. We have an interest in applying it to New Hampshire residents, especially when such advance expectations as they may have had, based upon their domicile in New Hampshire, their maintenance of a car under our laws, and going on a short trip that was both to begin and end here, would have led them to anticipate application of our law to them. Unlike "rules of the road," as to which every consideration requires obedience to the rules that prevail at the place where the car is being driven, the factors that bear on this host-guest relationship all center in New Hampshire.

The only reasons that have ever been given, or that Vermont could possibly have, for enactment of its guest statute are ( 1 ) to protect kindly hosts from ungrateful guests ( "don't bite the hand that feeds you" ), and ( 2 ) to protect liability insurance companies from suits brought by guests colluding with their hosts. Ehrenz-weig, Conflict of Laws, s. 220 ( 1962 ). Vermont's interests under its statute are in suits brought in its own courts affecting hosts, guests and insurance companies subject to its jurisdiction. Our primary interest arising out of our ordinary negligence law correspondingly applies to suits in our courts affecting people and relationships with which we have a legitimate concern. That interest in this case is a real one.

Finally, we conclude that our rule is preferable to that of Vermont. The automobile guest statutes were enacted in about half the states, in the 1920's and early 1930's, as a result of vigorous pressures by skillful proponents. Legislative persuasion was largely in terms of guest relationships ( hitchhikers ) and uninsured personal liabilities that are no longer characteristic of our automotive society. Cavers, The Choice of Law Process 297 ( 1965 ). The problems of automobile accident law then were not what they

are today. New Hampshire never succumbed to this persuasion. No American state has newly adopted a guest statute for many years. Courts of states which did adopt them are today construing them much more narrowly, evidencing their dissatisfaction with them. Pedrick, Taken for a Ride: The Automobile Guest and Assumption of Risk, 22 La. L. Rev. 90 ( 1961 ); Comment, the Ohio Guest Statute, 22 Ohio St. L. J. 629 ( 1961 ). Though still on the books, they contradict the spirit of the times. Leflar, Choice-Influencing Considerations on Conflicts Law, 41 N. Y. U. L. Rev. 267, 278, 307 ( 1966 ). Unless other considerations demand it, we should not go out of our way to enforce such a law of another state as against the better law of our own state. Weintraub, A Method for Solving Conflicts Problems: Torts, 48 Cornell L. Q. 215, 220 ( 1963 ).

Taken altogether, this analysis of the relevant choice-of-law considerations leads clearly to the application of New Hampshire's law in the present case. The " . . . circumstances under which a guest passenger has a right of action against the driver of an automobile for injuries suffered as a result of the latter's negligence will be determined by the local law of their common domicil, if at least this is the state from which they departed on their trip and that to which they intended to return, rather than by the local law of the state where the accident occurred." Restatement ( Second ), Conflict of Laws, s. 379, comment d, p. 9 ( Tent. Draft No. 9 ). See also, s. 3791, comment f, p. 80. Babcock v. Jackson, 12 N. Y. 2d 473. Cf. Dym v. Gordon, 16 N. Y. 2d 120. This case is a comparatively easy one, and in cases like it the result will hereafter be reasonably easy for lawyers and trial judges to calculate. Admittedly there will be harder cases, more difficult to decide, cases that will not yield sure answers in terms of proper choice-influencing considerations as readily as this case does. That will not be a new phenomenon in conflict of laws. Nor will it be as bad as choice based on mechanical rules which do not take the relevant considerations into account. In course of time perhaps we will develop "principles of preference" based upon the relevant considerations, to guide us more exactly. Cavers, The Choice of Law Process 114 ( 1965 ). Most of the choice-of-law rules and results that have been reached in the past were supported by good sense and sound practical analysis, and will not be affected by re-examination in terms of the relevant choice-influencing considerations. Some, like the place of injury rule for

torts, clearly will be affected. Annot. 95 A.L.R. 2d 12. That is as far as this decision need go.

The Superior Court is advised that it should enter a pre-trial order that the New Hampshire law pertaining to husband and wife and host and guest governs the rights of the parties in this action. Pre-trial rule of Superior Court 51( a )( 7 ). RSA 491 App R 51 ( supp ); Nims, Pre-Trial 165 ( 1950 ).

*Remanded.*

DUNCAN, J., dissented; the others concurred.

DUNCAN, J., *dissenting*: Today's decision may come as an expectable extension of *Thompson* v. *Thompson*, 105 N. H. 86; but when that case was decided the court declined to hold that the law of the forum, which was the law of the place of the domicile of the parties, should determine in addition to their interspousal rights and liabilities, the standard of care to govern their conduct abroad as well as at home. *Id.,* 89.

Obviously the host-guest relationship is not restricted to husband and wife, and the considerations relied upon to decide today's case furnish no satisfactory guidance in the case where the guest is unrelated to his host by blood or marriage and is domiciled in a different jurisdiction. In *Dow* v. *Larrabee*, 107 N. H. 70, a majority of the court noted the general rule that the law of the state where conduct and injury occur will be applied to determine whether the actor's conduct has satisfied required standards of behavior; and concluded that the host-guest case then before it called for no exception to that principle.

Determination of the standard of care to be invoked in the case now before us appears to me to involve considerations more closely allied to those which govern the question of what law shall regulate conduct, than to those presented by the issue of what law shall determine whether a wife may recover against her husband, or a minor child against his parent. Hence I would apply the law of the place where the conduct and injury occurred, not alone in the interest of establishing a rule capable of consistent application to host-guest cases, but also in the conviction that the way in which an actor shall be required to act is of greater concern and more appropriately left to the state where he chooses to act, than it is to some other state where he has a home

which he has left behind him. See Leflar, 41 N. Y. U. L. Rev. 267, 293 - 294.