Rockingham,
No. 6054.

EUNICE BULLOCK TAYLOR

*v.*

JAMES M. BULLOCK

EUNICE J. BULLOCK

*v.*

RUSSELL A. MASON

June 30, 1971.

*Grinnell & Bureau* ( *Mr. George H. Grinnell* orally ) for the plaintiff.

*Wiggin, Nourie, Sundeen, Pingree & Bigg* and *William S. Orcutt* ( *Mr. Orcutt* orally ) for defendant James M. Bullock.

*Devine, Millimet, McDonough, Stahl & Branch ( Mr. Shane Devine* orally ) for defendant Russell A. Mason.

LAMPRON, J. Action by plaintiff, Eunice J. Bullock, now Eunice Bullock Taylor, to recover for damages resulting from a collision, on December 6, 1964, at Brentwood, in this State, between a motor vehicle operated by defendant Bullock and one driven by defendant Mason. At the time of the accident Bullock and the plaintiff were husband and wife living together in Massachusetts. Subsequent thereto they were divorced and plaintiff had remarried and was a resident of Georgia when she brought her action on May 5, 1969 against her former husband who was still a resident of Massachusetts.

Defendant Bullock moved to dismiss plaintiff's action on the ground that it was barred by the rule of interspousal immunity. This motion was denied without prejudice.

During the pendency of that motion, defendant Mason had filed a motion to implead defendant Bullock for contribution in plaintiff's action against him. This motion was denied in view of the denial of Bullock's motion to dismiss the action against him by his former wife.

Defendant Bullock had also filed a motion to dismiss Mason's claim for contribution on the ground that it was barred by the terms of a release that Mason executed in favor of Bullock on September 15, 1965. This motion was denied without prejudice.

All questions of law raised by the exceptions of the defendants to the denial of their respective motions were reserved and transferred by *Perkins*, J.

Under New Hampshire law a married woman can maintain an action of tort against her husband during their marriage. *Johnson* v. *Johnson*, 107 N.H. 30, 216 A.2d 781 ( 1966 ); *Schneider* v. *Schneider*, 110 N.H. 70, 260 A.2d 97 ( 1969 ). After their divorce she can institute a similiar action against her former husband. 41 Am. Jur. 2d Husband and Wife *s*. 527 ( 1968 ). Under Massachusetts law, a wife cannot maintain such an action against her husband while they are married nor can she do so after their divorce. *Callow* v. *Thomas*, 322 Mass. 550, 78 N.E.2d 637 ( 1948 ). This presents a true conflict. *Johnson* v. *Johnson, supra* at 32, 216 A.2d at 783; 48 B.U.L. Rev. 164, 169 ( 1968 ); *see* 55 Cal. L. Rev. 74 ( 1967 ). The issue to be decided is whether the law of New Hampshire or that of Massachusetts governs.

This court has concluded that choice-of-law decisions such as the present one ought to be based directly upon five relevant considerations. *Clark* v. *Clark*, 107 N.H. 351, 353, 222 A.2d 205, 208 ( 1966 ); *Doiron* v. *Doiron*, 109 N.H. 1, 2, 241 A.2d 372, 373 ( 1968 ). These have been discussed at length in the *Clark* case, *supra* at 354, 355, 222 A.2d at 208-09, and summarized in the *Doiron* case, *supra* at 3, 241 A.2d at 373. Some of these five considerations will be more relevant in some cases and less in others. However, one of them, " the court's preference for what it regards as the sounder rule of law, " can play an important role in the ultimate choice made between the two competing laws. *Clark* v. *Clark*, 107 N.H. 351, 355, 222 A.2d 205, 209 ( 1966 ); *Heath* v. *Zellmer*, 35 Wis. 2d 578, 151 N.W.2d 664 ( 1967 ); *Haines* v. *Mid-Century Ins. Co.*, 47 Wis. 2d 442, 177 N.W.2d 328 ( 1970 ); Leflar, American Conflicts Law *s*. 110 ( 1968 ); 118 U. Pa. L. Rev. 202, 230-35 ( 1969 ); *see Cipolla* v. *Shaposka*, 439 Pa. 563, 568-78, 267 A.2d 854, 857-62 ( 1970 ) ( dissenting opinion ).

The determination of which is the sounder rule of law between the conflicting laws of the jurisdictions concerned requires an examination of the policies behind these rules and a decision as to which represents " the sounder view of the law in light of the socio-economic facts of life at the time when the court speaks. " *Heath* v. *Zellmer*, *supra* at 598, 151 N.W.2d at 673; *Cipolla* v. *Shaposka*, *supra* at 578, 267 A.2d at 860; *see* 47 Texas L. Rev. 977 ( 1969 ).

The bases for the Massachusetts interspousal immunity doctrine are stated in *Lubowitz* v. *Taines*, 293 Mass. 39, 198 N.E. 320 ( 1935 ), and *Callow* v. *Thomas*, 322 Mass. 550, 78 N.E.2d 637 ( 1948 ) to be the following. Under the common law, on marriage, husband and wife in legal contemplation became only one person, hence, neither husband nor wife could sue the other. More fundamentally, however, because of this unity no cause of action ever came into existence. *Callow* v. *Thomas*, *supra* at 552, 78 N.E.2d at 638. Such a rule it is said preserves domestic harmony and avoids collusive suits. Prosser, Law of Torts *s*. 116, at 883 ( 3d ed. 1964 ); *see Doiron* v. *Doiron*, 109 N.H. 1, 4, 241 A.2d 372, 374 ( 1968 ).

This fictitious concept of the common-law unity of the spouses has been largely dissipated by the widespread enactment of Married Women's Acts designed to secure a married woman a separate legal identity with corresponding legal rights. RSA ch.

460; *Gilman* v. *Gilman*, 78 N.H. 4, 95 A. 657 ( 1915 ); McCurdy, Torts Between Persons in Domestic Relation, 43 Harv. L. Rev. 1030, 1036 - 050 ( 1930 ). Considerable courage would be required to defend the common - law metaphysical concept of unity in to-day's climate of public opinion. *Immer* v. *Risko*, 56 N.J. 482, 267 A.2d 481 ( 1970 ).

In the same vein it is doubtful that domestic felicity will be any more disturbed by allowing a cause of action than by denying it to spouses during their marriage. That consideration disappears in a case like the present one, where the parties are no longer married to each other. *See* Cavers, The Choice - of - Law Process 179 ( 1965 ). The argument concerning the possibility of fraud and collusion has been found wanting by this court when ad-vanced for the application of host - guest statutes of other juris-dictions. *Clark* v. *Clark*, 107 N.H. 351, 356, 357, 222 A.2d 205, 209, 210 ( 1966 ). Our long standing policy of permitting inter- ·spousal suits and our decision to allow suits by unemancipated children against their parents are proof that " we are unwilling to espouse the doctrine that the mere opportunity for fraud and collusion should be an insuperable barrier to an honest and meritorious action. . ." *Briere* v. *Briere*, 107 N.H. 432, 435, 224 A.2d 588, 590 ( 1966 ).

Leading commentators on the subject have taken a position against interspousal immunity. Prosser, Law of Torts. *s.* 116, at 883, 884 ( 3d ed. 1964 ); 1 Harper & James, Law of Torts 645, 646 ( 1956 ); *see* 21 U. of Fla. L. Rev. 484 ( 1969 ). Furthermore an increasing number of jurisdictions, such as New Jersey ( *Immer* v. *Risko*, 56 N.J. 482, 267 A.2d 481 ( 1970 ) ), have rejected the arguments in favor of immunity. We consider that our law per-mitting actions by spouses to recover for torts committed by one against the other is more relevant than ever under today's condi-tions. *Doiron* v. *Doiron*, 109 N.H. 1, 4, 241 A.2d 372, 374 ( 1968 ). We hold, therefore, that our law permitting the mainten-ance of the present action by the plaintiff against her former hus-band is the sounder rule of law.

Furthermore New Hampshire has an obvious interest in provid-ing redress for injuries which occur on its highways. *Dow* v. *Larrabee*, 107 N.H. 70, 72, 217 A.2d 506, 508 ( 1966 ). This is especially true when, as in this case, one of the vehicles involved was operated by a resident of this State. Permitting plaintiff to maintain her suit will promote the advancement of our State's governmental interest. *Clark* v. *Clark*, 107 N.H. 351, 354, 222

A.2d 205, 208 ( 1966 ). The other pertinent considerations in arriving at a choice-of-law, that is, predictability of results, maintenance of interstate orderliness, and simplification of the judicial process, will be satisfied, or at least not contravened, by a decision to apply New Hampshire law in this case. We conclude therefore that plaintiff can maintain her suit against her former husband and his motion to dismiss it was properly denied. *Clark* v. *Clark supra*; *Doiron* v. *Doiron*, 109 N.H. 1, 241 A.2d 372 ( 1968 ); *see* Annot., 29 A.L.R.3d 603, 631-34, 637-39 ( 1970 ).

Defendant Mason properly conceded in his brief that the above holding by this court would render unnecessary his motion to implead defendant Bullock in plaintiff's action against him. Consequently we need not consider Mason's exception to the trial court's denial of his motion to implead.

Plaintiff has properly brought an action against each defendant to recover for injuries resulting from a collision which she alleges was caused by their negligence. The issue of contribution between these defendants, if such is allowed, will not arise unless it is established that they were joint tortfeasors. Prosser, Law of Torts *s.* 47 ( 3d ed. 1964 ); *Restatement* ( Second ) of Torts *s.* 886A ( Tent. Draft No. 16, 1970 ); *see* Uniform Contribution Among Tortfeasors Act *s.* 1 ( 1955 revised version, 1967 supp. at 127 ). Consequently the effect of a release given by Mason in favor of Bullock on the right to contribution raised by the latter's motion cannot be passed upon at this stage of the proceedings. The trial court properly denied Bullock's motion without prejudice. *Piper* v. *Meredith*, 109 N.H. 328, 330, 251 A.2d 328, 329 ( 1969 ).

*Remanded.*

All concurred.