Strafford
No. 7869

LOIS GORDON

v.

ROBERT GORDON

May 17, 1978

*Hamilton R. Krans, Jr.*, of Dover, by brief and orally, for the plaintiff.

*Fisher, Parsons, Moran & Temple*, of Dover (*Robert H. Temple* orally), for defendant.

GOODE, J. (By special assignment pursuant to RSA 490:3.) This case raises familiar conflicts of law questions arising from interspousal suits. The plaintiff, Lois Gordon, filed suit on November 1, 1976, against her husband, Robert, for injuries she sustained in a car accident on Route 95 in Hampton, New Hampshire on July 2, 1971. At the time of the accident both parties were married domiciliaries and residents of Chicopee, Massachusetts. Robert Gordon's connection with the Air Force required frequent relocations and in the interim between the accident and institution of this suit both parties lived in numerous other jurisdictions including some time in New Hampshire. Prior to suit the parties moved to North Berwick, Maine, and have been domiciled there at all relevant times since.

Defendant's motion to dismiss on the grounds that this suit was barred by Maine's interspousal immunity rule and, in the alternative, the Massachusetts two-year statute of limitations, was granted. Plaintiff's exceptions to this ruling were reserved and transferred by *Mullavey*, J. We reverse.

New Hampshire, site of the accident and interim domicile of the parties, has long allowed interspousal suits. *Morin v. Letourneau*, 102 N.H. 309, 156 A.2d 131 (1959); *Doiron v. Doiron*, 109 N.H. 1, 241 A.2d 372 (1968); *Taylor v. Bullock*, 111 N.H. 214, 279 A.2d 585 (1971); RSA 460:2. Massachusetts, domicile of the parties at the time of the accident, followed the rule of interspousal immunity at that time but has recently abandoned the rule. *Lewis v. Lewis*, 351 N.E.2d 526 (Mass. 1976). *Lewis* was given retroactive effect in *Pevoski v. Pevoski*, 358 N.E.2d 416 (Mass. 1976).

As between Massachusetts and New Hampshire, no conflict exists in permitting interspousal tort actions, for each jurisdiction would arrive at the same result by application of the same rule, R. Leflar, American Conflicts Law, 237 (1968); 55 Calif. L. Rev. 74, 106 (1967), and as between these two jurisdictions we are free to follow our rule allowing a wife to sue her husband.

Maine, the domicile of the parties at the time of the suit, adheres reluctantly to interspousal immunity. *Moulton v. Moulton*, 309 A.2d 224 (Me. 1973); *Bedell v. Reagan*, 159 Me. 292, 192 A.2d 24 (1963); *Abbott v. Abbott*, 67 Me. 304 (1877). In *Bedell* the court allowed a defendant tort-feasor contribution against a husband for damages awarded to the husband's wife. That decision criticized the metaphysical concept of unity of husband and wife and held that protection of domestic harmony was not a sufficient policy consideration to override the defendant's right to contribution. In *Roberts v. American Chain & Cable Co.*, 259 A.2d 43 (Me. 1969), *Bedell* was

358

viewed as dispelling a "vestigial remnant of state policy" that was more theory than fact, and in *Moulton* the court allowed a wife to sue her husband for injuries sustained prior to their marriage. The court completely abandoned the unity concept and criticized the policies of avoidance of collusive lawsuits and preservation of domestic harmony. Nonetheless, the decision in *Abbott* has not been overruled and it continues to be the law in Maine, presenting a true conflict.

■ Choice of law governing interspousal immunity is controlled by the relevant considerations summarized in *Clark v. Clark,* 107 N.H. 351, 222 A.2d 205 (1966) and *Doiron v. Doiron,* 109 N.H. 1, 241 A.2d 372 (1968). They are (1) predictability of results; (2) maintenance of reasonable orderliness and good relationships among the States in our federal system; (3) simplification of the judicial task; (4) advancement by the court of its own State's governmental interests rather than those of other States; (5) the court's preference for what it regards as the sounder rule of law as between competing ones: *Doiron v. Doiron, id.* at 3, 241 A.2d at 373.

Predictability of results is of limited concern in automobile accident cases because they are not planned occurrences. *Clark v. Clark supra.* In *Johnson v. Johnson,* 107 N.H. 30, 216 A.2d 781 (1966), we recognized that predictability of insurance risks militated in favor of applying the Massachusetts immunity rule to a case arising from a tort in New Hampshire between a Massachusetts husband and wife. That consideration is not relevant here. The risk insured against in this case was never dependent in any way upon application of the Maine rule, for the parties have only recently moved there, some six years after the accident.

We have frequently voiced our preference for the rule allowing interspousal suits. *Doiron v. Doiron,* 109 N.H. 1, 241 A.2d 372 (1968); *Taylor v. Bullock,* 111 N.H. 214, 279 A.2d 585 (1971). The concept of unity of husband and wife is archaic and in disrepute, even in Maine. *Moulton v. Moulton,* 309 A.2d 224 (Me. 1973); *Bedell v. Reagan,* 159 Me. 292, 192 A.2d 24 (1963). We have rejected the argument that paternalistic protection of domestic harmony justifies leaving tortious injuries unredressed. *Doiron v. Doiron,* 109 N.H. at 4, 241 A.2d at 374; *Taylor v. Bullock,* 111 N.H. at 217, 279 A.2d at 597. Maine has echoed similar sentiments in both *Moulton v. Moulton* and *Bedell v. Reagan supra.* The fear of collusive lawsuits against the husband's insurer has also been rejected as a basis for denying the wife's recovery, *Taylor v. Bullock,* 111 N.H. at 217, 279 A.2d at

597, and Maine has adopted a similar position: "A generalized policy concern to prevent fraud or collusion, as well as a paternalistic interest to protect the citizenry against itself through the elimination of temptations for fraud or collusion, are, in our view, insufficiently weighty to render tolerable the basic unfairness and inequity inhering in the denial of a remedy to one who has suffered a wrong at the hands of another." *Moulton v. Moulton*, 309 A.2d at 229.

We affirm our position that the New Hampshire rule is the better one and are bolstered in this conclusion by our observation that Maine's adherence to the rule stems more from abidance with the principle of stare decisis than belief in the continuing soundness of the rule.

This case is factually similar to *Doiron* in the analysis of the interests at stake in making a choice of law. In *Doiron* we ruled that domiciliaries of New Hampshire could sue in New Hampshire for injuries sustained here even though they had become Massachusetts domiciliaries at the time of the suit. Since a cause of action accrued under New Hampshire law to a New Hampshire domiciliary, we would not "under the guise of promoting federal felicity, subscribe to a view that the law of the domicile of the parties when an action is instituted should bar a suit by a wife against her husband instituted in New Hampshire to enforce a right of action which arose here from conduct of one spouse toward the other when they were domiciled in this state." *Doiron v. Doiron*, 109 N.H. at 4, 241 A.2d at 374. The only difference between *Doiron* and the instant case is that here, at the time of the accident, the parties were domiciled in Massachusetts. That distinction is of no moment, however, because Massachusetts now, by retroactive decision, allows interspousal suits. Therefore, the forum's interest in providing redress for one injured in New Hampshire, as well as the interest of Massachusetts in seeing its law applied, require us to hold that any interest of Maine, as domiciliary jurisdiction at time of suit, in preventing this suit, must yield. Again, we are bolstered in this conclusion by the dubious vitality of the rule in Maine.

Defendant argues that our decisions in *Schneider v. Schneider*, 110 N.H. 70, 260 A.2d 97 (1969) and *Johnson*, 107 N.H. 30, 216 A.2d 781 (1966), make domicile at the time of suit a controlling consideration. We have rejected mechanistic approaches to choice of law problems such as the lex loci delicto approach in *Gray v. Gray*, 87 N.H. 82, 174 A. 508, 94 A.L.R. 1404 (1934), and have applied the balancing test of *Clark* to the choice of which state's spousal im-

munity rule will apply. *Doiron v. Doiron supra; Taylor v. Bullock supra. Johnson* was decided before *Clark*, but there we said: "However, it may be noted that we are not now choosing the law of domicile for its simplicity. We have chosen that law only after we have considered the purposes of the respective state laws here in conflict. . . ." *Johnson v. Johnson*, 107 N.H. at 33, 216 A.2d at 783. *Johnson* foreshadowed *Clark*, and its deference to the domicile of the parties falls short of making that a controlling factor in our choice. *Schneider* followed the reasoning of *Clark* and *Doiron* and reached its conclusion based on its facts. Massachusetts law was applied to bar a wife's suit for injuries inflicted in New Hampshire prior to marriage. While domicile at time of suit was a relevant consideration, we ruled that "the reasons which support the interspousal doctrine of Massachusetts, the State of their domicile were just as significant at the time suit was brought in this case as they were in the *Johnson* case." *Schneider v. Schneider*, 110 N.H. at 72, 260 A.2d at 99.

Maine, as a recently adopted domicile of the parties, does not have the same interest in seeing its law applied that Massachusetts had in *Schneider*. It has no interest in protecting insurance companies from collusive lawsuits as did Massachusetts in *Johnson* and *Schneider*. *Schneider* is further distinguishable because, there New Hampshire's interest was predicated on the site of the accident; here, in addition to that interest, there also exists the interest of Massachusetts, domicile of the parties at the time of accident, in seeing its rule applied.

■■ Domicile alone, however, is not the controlling factor. Only analysis of the underlying reasons behind competing rules and their relevance in a given factual context can answer the question of which law applies, and we hold in this case that the New Hampshire rule applies.

■ The final question raised is whether the then applicable two-year limitation on actions, 1948 Mass. Acts, ch. 274, § 2 *amended by* Mass. Gen. Laws, Ch. 260, sec. 2A (Supp. 1976) bars the plaintiff. We have long followed the general rule that a statute of limitations is a matter of procedure and as such the law of the forum applies. *Moylan v. Lamothe*, 92 N.H. 299, 30 A.2d 11 (1943); *Barrett v. Boston & Maine R.R.*, 104 N.H. 70, 178 A.2d 291 (1962). The exceptions for limitations that extinguish a right, *Dupuis v. Woodward*, 97 N.H. 351, 88 A.2d 177 (1952), or that are an inherent part of a statutory scheme creating a right, do not apply here. Massachusetts follows the same rule. *Clarke v. Pierce*, 215 Mass. 552, 102 N.E.

1094 (1913); *Bonsant v. Rugo*, 190 F. Supp. 958 (1961). Since the action was commenced within the six-year period prescribed by RSA 508:4 (Supp. 1975), the trial court should have permitted the suit to proceed.

*Exceptions sustained; remanded.*

LAMPRON, J., did not sit; BROCK, J., sat by special assignment pursuant to RSA 490:3; all concurred.