**Stephen SMITH**

v.

**MORBARK INDUSTRIES, INC.**

**Civ. No. 88–466–D.**

United States District Court, D. New Hampshire.

April 4, 1990.

R. Peter Decato, Lebanon, N.H., for plaintiff.

Gregory S. Clayton, St. Johnsbury, Vt., for defendant.

## ORDER

DEVINE, Chief Judge.

Defendant seeks reconsideration of the Court's October 3, 1989, Order which denied defendant's motion to dismiss and for summary judgment. As the basis for reconsideration, defendant argues that the Court erred by applying New Hampshire law to determine (1) the effect of a previous release signed by plaintiff, and (2) the applicable statute of limitations. Defendant takes the position that Vermont law applies to both issues and that such application requires dismissal of the present action. Briefly stated, the factual basis of plaintiff's claim follows.

Stephen Smith suffered severe injuries on November 27, 1983, when his legs were caught in a lumber conveyor he was operating in the course of his employment with Land East Corporation. The accident occurred at a sawmill (known as "Tri–State Timberland") operated by Land East in Hartland, Vermont.

In November 1986, Smith brought suit in Vermont state court against Tri–State Timberland and Morbark Maine, Inc. Smith alleged that Morbark Maine had negligently designed and manufactured the conveyor that caused his injury. It later became clear that Smith sued the wrong Morbark. Morbark Industries, Inc., a Michigan corporation, not Morbark Maine, manufactured the "48 foot trough type conveyor" operated at Tri–State's sawmill. Morbark Maine was dismissed from the action, but by the time Smith learned of his mistake, it was too late to bring suit against the proper Morbark—Vermont's three-year statute of limitations had run.

On August 3, 1988, Smith dismissed his state claim pursuant to a general release in which he accepted $25,000 in exchange for his agreement to forego "any and all manner of action and actions, cause and causes of action, suits, damages, judgments, executions, claims for personal injuries, property damage and demands whatsoever, in law or in equity" against Land East, Tri–State Timberland and the Aetna Insurance Company. October 26, 1988, General Release (exhibit # 2 attached to defendant's motion to dismiss and for summary judgment).

Approximately three weeks later, Smith initiated the instant claim against Morbark Industries in this court.

### 1. Statute of Limitations

In the October 3, 1989, Order, the Court concluded that New Hampshire's six-year statute of limitations (not Vermont's three-year statute) applies to this action. That conclusion was based on the finding that the issue was procedural, not substantive.

> New Hampshire has "long followed the rule that a statute of limitations is a matter of procedure and as such the law of the forum applies." *Gordon v. Gordon*, 118 N.H. 356, 360, 387 A.2d 339, 342 (1978). The rule was recently reaffirmed by the *Keeton* court which stated that "the varied purposes that statutes of

limitations are meant to serve justify the application of forum law, and thus the essential treatment of such statutes as procedural rules, in most instances, whether or not our choice of law principles advise application of New Hampshire substantive law." *Keeton* [*v. Hustler Magazine, Inc.*, 131 N.H. 6,] 14, 549 A.2d [1187,] 1192 (1988).

Order at 21.

*Keeton* was a libel suit brought in New Hampshire by a New York domiciliary against Hustler Magazine and Larry Flynt, Hustler's publisher, both non-resident defendants. The case was related to New Hampshire in only one way: less than one percent of Hustler's magazines were distributed in the state. Nevertheless, the New Hampshire Supreme Court ruled that New Hampshire's six-year statute of limitations applied, not the shorter periods adopted in the other interested states. "[T]he varied purposes that statutes of limitations are meant to serve justify the application of forum laws, and the essential treatment of such statutes as procedural rules, in most instances, whether or not our choice of law principles advise application of New Hampshire substantive law." *Keeton, supra,* 131 N.H. at 14, 549 A.2d at 1192.

It is true that the New Hampshire Supreme Court left open the possibility that the statute of limitations question could be analyzed with reference to the "Leflar" choice-of-law analysis in the appropriate case. But New Hampshire's highest court has not yet identified that case, and this Court is not persuaded that the present case requires different treatment than *Keeton.* Morbark's relationship with this state is minimal, but it is not that different from the activities Hustler conducted here, and those activities were enough to support application of the New Hampshire statute of limitations.

In essence, defendants here take the position championed by Justices Souter and Thayer in the *Keeton* dissent. Justice

Souter's opinion brilliantly stated the case for applying modern choice-of-law principles to determine which state's limitation period to apply. That opinion, however, did not win a majority in the *Keeton* case and therefore it cannot win here.

The New Hampshire Supreme Court has consistently chosen to apply New Hampshire's statutes of limitation in similar situations. *See, e.g., Gordon v. Gordon,* 118 N.H. 356, 387 A.2d 339 (1978); *Barrett v. Boston & M.R.R.* 104 N.H. 70, 178 A.2d 291 (1962); *Potter v. Lefebvre,* 95 N.H. 482, 66 A.2d 643 (1949); *Smith v. Turner,* 91 N.H. 198, 17 A.2d 87 (1941); *Connecticut Valley Lumber Co. v. Maine Cent. R.R.,* 78 N.H. 553, 103 A. 263 (1918). As noted in the Court's prior Order, there are only two exceptions to this general rule: foreign statutes of limitations are applied "only when such statutes either 'extinguish a right, or ... are an inherent part of a statutory scheme creating a right.'" *Keeton, supra,* 131 N.H. at 14, 549 A.2d at 1192. *See also, Dupuis v. Woodward,* 97 N.H. 351, 88 A.2d 177 (1952) (action time-barred where Quebec statute upon which claim was based "absolutely extinguished" the right to maintain such action after one year). Neither exception applies in this case.

Accordingly, after carefully considering defendant's arguments, the Court concludes that New Hampshire's six-year statute of limitations applies, and plaintiff's claim was therefore timely filed.

*2. Choice–of–Law: The Vermont Release*

■ Defendant also argues that the Court erred in applying New Hampshire law to determine the effect of the release. As explained in the earlier Order, plaintiff executed the release and thereby expressly gave up his right to pursue a claim against Land East Corporation, Tri–State Timberland, and Aetna Insurance Company. Vermont adheres to the common law doctrine that would extend the release to Morbark, a joint tortfeasor.[1] The animating princi-

---

1. For present purposes, the Court accepts, without deciding, that Vermont law so holds. There appears to be contrary authority. *See Muir v.*

*Hartford Acc. & Indemnity Co.,* 147 Vt. 590, 592, 522 A.2d 236, 238 (1987) ("Settlement was formalized in the covenants not to sue, which ran

ples behind that doctrine have been described as follows:

> At common law, the release of a claim against one joint tortfeasor by an injured party released all. In the eyes of the law, the plaintiff's harm was the product of concerted action and all defendants were jointly and severally liable for the entire injury. There was, therefore, but one cause of action and a plaintiff was not permitted to segment the litigation by piecemeal resolution. It was assumed that to allow otherwise would open the door for multiple recoveries for the same injury.
>
> Confusion ensued in the nineteenth century when courts began the practice of consolidating all related claims into one case. As a consequence of liberalized joinder rules, the term joint tortfeasor was soon expanded beyond its previous definition to include individuals whose combined actions had produced injury but who had not acted in conscious concert. Although these "concurrent tortfeasors" could not at common law have been joined in a single action and thus, would not have been subject to the rule of "release one, release all," the linguistic evolution extended the benefits of the rule to such defendants. In many jurisdictions, it was routinely held that a release of one tortfeasor whether joint or concurrent automatically released all despite express reservations to the contrary in the language of the document.

*Welsh v. Gerber Products, Inc.*, 839 F.2d 1035, 1037 (4th Cir.1988).

Simply put, if the Vermont joint tortfeasor doctrine controls, Smith has no claim against Morbark; if the law of New Hampshire applies, Smith's claim survives.

The relevant New Hampshire statute reads as follows:

> *Effect of Release or Covenant Not to Sue.* A release or covenant not to sue given in good faith to one of 2 or more persons liable in tort for the same injury discharges that person in accordance with its terms and from all liability for contribution, but it does not discharge any other person liable upon the same claim unless its terms expressly so provide. However, it reduces the claim of the releasing person against other persons by the amount of the consideration paid for the release.

New Hampshire Revised Statutes Annotated ("RSA") 507:7–h (1986).[2]

After careful consideration of this close question, the Court adheres to its earlier decision—New Hampshire law applies, and the case is not barred. For purposes of providing a more complete explanation of the reasons for its position, the Court adds the following.

It is undisputed that this Court must apply New Hampshire's choice-of-law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Roy v. Star Chopper Co.*, 584 F.2d 1124, 1128 (1st Cir.1978), *cert. denied*, 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979). Defendant asserts that the rules applicable here are those that apply to the making of contracts, not torts, as the Court previously held. But in either case, New Hampshire has adopted modern choice-of-law principles; that is, multi-factor analyses that reject mechanistic "lex loci" rules. Thus, whether the Court applies the five choice-influencing factors of the "Leflar" tort test,[3] *see Labounty v.*

---

only to the Hartford's insured and did not purport to release Hartford.").

**2.** Although the parties do not address the question, a third state has an interest in this action. That state is Michigan, the state in which the allegedly defective machine was manufactured. Michigan has adopted a contribution act similar to New Hampshire's. That act, Mich.Stat.Ann. 27A.2925d [M.C.L.A. § 600.2925d] (amended 1974), in pertinent part, reads as follows:

> When a release or a covenant not to sue or not to enforce judgment is given in good faith

to 1 or 2 or more persons liable in tort for the same injury or the same wrongful death: (a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide.

**3.** That test is described as follows: "We choose among substantive laws by applying a balancing test composed of five choice-influencing considerations: '(1) the predictability of results; (2) the maintenance of reasonable orderliness and good relationships among the States in the federal system; (3) simplification of the judicial

*American Ins. Co.*, 122 N.H. 738, 741, 451 A.2d 161, 163 (1982); *Clark v. Clark*, 107 N.H. 351, 353–55, 222 A.2d 205, 208–09 (1966), or the "significant relationship" contract test,[4] *see Consolidated Mutual Insurance Co. v. Radio Foods Corp.*, 108 N.H. 494, 496–97, 240 A.2d 47, 48–49 (1968), the result is the same: in this Court's view, New Hampshire law applies, and plaintiff's claim survives.

Defendant argues that *Goulet v. Goulet*, 105 N.H. 51, 192 A.2d 626 (1963), compels a different conclusion. In that case, plaintiff sued her husband (both domiciled in Maine) for injuries arising out of a New Hampshire car accident. After the accident, the wife signed a covenant not to sue which, in material part, read as follows:

> In consideration of the payment of one dollar ($1.00) receipt of which is hereby acknowledged, the undersigned hereby expressly covenants and agrees not to [sue] or to proceed after the date of the execution hereof with any suit or proceeding of any kind against William Goulet, either severally or jointly with any other person, on account of injuries claimed to have been sustained by me on March 21, 1954 at Raymond, N.H. and that undersigned will execute a full release of all claims and demands against my husband Wm. Goulet growing out of said alleged accident on demand."

*Id.* at 52, 192 A.2d 626. Apparently, Mrs. Goulet never actually received the dollar promised in the release, and she later filed suit against her husband. The central question before the Court was whether the above-quoted release was supported by sufficient consideration to make it enforceable and bar the action. The Court held that the law of Maine applied and that, therefore, no consideration was necessary to make the agreement enforceable. The suit was barred.

Defendant does not contend that *Goulet* still requires this Court to apply the law of the state in which the release was signed. That part of *Goulet* is plainly out of date. But beyond that, the Court finds *Goulet* distinguishable in that the plaintiff there was struggling to find a way to free herself from a release which clearly precluded the action which she pursued. The release at issue here does not similarly evince plaintiff's intention to forego a claim against this defendant. In the present case, it is the defendant that is struggling to find a way out of the action, hoping to find protection under a settlement to which it was not a party. The Court does not read *Goulet* to assist defendant. Neither does the Court find *Root v. Kaufman*, 48 Misc.2d 468, 265 N.Y.S.2d 201 (1965), persuasive. Although that case did involve the same general issue, the facts are so different that its application here cannot be fairly ascertained.

Moreover, the New Hampshire Supreme Court has expressed its preference for modern rules that do not unreasonably restrict tort actions. For example, the court in *Labounty v. American Ins. Co., supra*, 122 N.H. at 743, 451 A.2d 161, noted that it "has been critical of statutes limiting the recovery of tort victims." And in *Clark v. Clark, supra*, 107 N.H. at 355, 222 A.2d 205, the court forthrightly declared that in choosing which law to apply, it often chose the law it preferred.

> [A] fifth consideration, too often disguised, is the court's preference for what it regards as the sounder rule of law, as between the two competing ones. Professor Cavers has for years been pointing out that in choice-of-law cases courts have the opportunity to make, and do make, a choice between rules of law, as distinguished from the choice between jurisdictions that they have traditionally purported to make in conflicts cases. We prefer to apply the better rule of law in conflicts cases just as is done in non-

task; (4) advancement of the governmental interest of the forum; and (5) the court's preference for what it regards as the sounder rule of law.'" *Keeton v. Hustler Magazine, Inc.*, 131 N.H. 6, 14, 549 A.2d 1187, 1192 (1988).

4. That test was described in *Consolidated Mutual, supra*: "[I]n the absence of an express choice of law validly made by the parties, the contract is to be governed, both as to validity and performance, by the law of the state with which the contract has its most significant relationship."

conflicts cases, when the choice is open to us.

The common law rule still applied in Vermont is no longer applied in New Hampshire. *See* RSA 507:7–h. And here it seems unfair to allow Morbark the benefit of a release which, if executed in this state, would not have protected it from suit. This approach appears consistent with New Hampshire law. "If the law of some other state is outmoded, an unrepealed remnant of a bygone age, 'a drag on the coat-tails of civilization,' (Freund, Chief Justice Stone and the Conflict of Laws, 59 Harv.L.Rev. 1210, 1216 (1946), we will try to see our way clear to apply our own law instead." *Clark, supra,* at 355, 222 A.2d 205.

Finally, the Court finds support for its position in *Menendez v. Perishable Distributors, Inc.,* 763 F.2d 1374 (11th Cir.1985), and *Lamphier v. Washington Hosp. Center,* 524 A.2d 729 (D.C.App.1987). Menendez, a Florida citizen, was injured in a car accident in Georgia. He filed suits in the courts of Georgia and Florida. The Florida case was settled, and a release was signed there. The Georgia defendants argued that the Florida release, construed under Florida law, precluded the claims against them. The Georgia Supreme Court, in answer to questions certified to it, agreed, finding that Georgia choice-of-law rules require application of the law governing the place of the contract.

Two circumstances distinguish *Menendez* from the case at bar. First, New Hampshire has rejected the "lex loci contractu" rule applied by the Georgia courts. *See Consolidated Mutual, supra.* Second, the *Menendez* release "by its terms, forever discharged 'all ... persons, firms or corporations ... from any and all claims, demands, actions causes of actions or suits of any kind or nature whatsoever.'" *Menendez, supra,* at 1380. The release signed by Stephen Smith expressly applied only to Tri–State Timberland, Land East, and Aetna.

In *Lamphier,* a Maryland resident was injured in a car accident that occurred in the District of Columbia. Lamphier and his wife accepted a settlement from the driver of the other car and then sued a local hospital for negligent treatment of Mr. Lamphier's injuries. The hospital asserted that the prior settlement barred the suit against it, and the trial court agreed. That decision was reversed on appeal. The appeals court recognized that "[t]he release was signed in Maryland between two Maryland residents in settlement of litigation brought in Maryland." *Id.* at 731. Nonetheless, the court held that the law of the District of Columbia applied.

We conclude that the District of Columbia has the more substantial interest in applying its own law to interpret the release in the context of this case. The District has a strong and recognized interest in determining the liability of District health care corporations for negligence attributable to them that occurs within the District. By contrast, Maryland has little if any interest in applying its general release rule to limit the liability of a District of Columbia corporation which does not do business in Maryland, or to rights and liabilities of tortfeasors (including rights inter se) where the relevant tortious actions all occurred in the District. Since the public policy interests of Maryland and the District do not truly conflict under the circumstances presented here, and since the District has a substantial interest in applying its own law, we conclude that District law should govern the effect of the release.

*Id.* at 731. Similar considerations suggest that New Hampshire law should apply here. The Court has been presented with no evidence to suggest that defendant regularly does business in Vermont. New Hampshire, therefore, has a greater interest in regulating the effects of defendant's conduct which, if plaintiff's claim is taken as true, caused him severe injury after purposefully availing itself of the New Hampshire marketplace to distribute its products. In addition, Vermont has little interest in applying its general release rule to limit the liability of a Michigan corporation which does little, if any, business in Vermont.

For the reasons stated hereinabove and in the Court's October 3, 1989, Order, de-

fendant's motion to dismiss or for summary judgment must be denied.

### 3. Interlocutory Appeal

■ Citing 28 U.S.C. § 1292(b),[5] defendant seeks an interlocutory appeal of this decision. The First Circuit, however, has warned the district courts within its venue that certification of interlocutory appeals is to be had only in exceptional circumstances.

> Only rare cases will qualify for the statutory anodyne; indeed, it is apodictic in this circuit that interlocutory certification of this sort "should be used sparingly and only in exceptional circumstances, and where the proposed intermediate appeal presents one or more difficult and pivotal questions of law not settled by controlling authority." *McGillicuddy v. Clements,* 746 F.2d 76, 76 n. 1 (1st Cir. 1984); *see also In re Heddendorf,* 263 F.2d 887, 888–89 (1st Cir.1959); *Bank of New York v. Hoyt,* 108 F.R.D. 184, 188–90 (D.R.I.1985). Although the call is close, we believe the work product issue in this matter to be sufficiently novel and important, and the circumstances sufficiently out of the ordinary, as to fulfill the statutory requisites. But we warn the parties and the district court that, in this case and any others, we will hew carefully to the *McGillicuddy* line—for we continue to believe that the instances where section 1292(b) may appropriately be utilized will, realistically, be few and far between.

*In re San Juan Dupont Plaza Hotel Fire Litigation,* 859 F.2d 1007, 1010 (1st Cir. 1988).

Additionally, neither the fact that appreciable trial time may be saved, *Palandjian v. Pahlavi,* 782 F.2d 313, 314 (1st Cir.1986), *cert. denied,* 481 U.S. 1037, 107 S.Ct. 1974, 95 L.Ed.2d 814 (1987), nor that the issue

sought to be raised involves denial of a motion to dismiss, *McGillicuddy v. Clements, supra,* 746 F.2d at 76 n. 1, provides sufficient reason for certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Considerably more by way of exceptional circumstances is required. *See, e.g., United States v. Arkwright, Inc.,* 697 F.Supp. 1231, 1233 (D.N.H.1988) (granting certification where two district courts in the First Circuit had arrived at opposite conclusions); *Cummins v. EG & G Sealol, Inc.,* 697 F.Supp. ⁚ . (D.R.I.1988) (denying certification whe⸗ issue sought to be appealed involved the amendment of a complaint to permit addition of a cause of action).

Accordingly, upon careful reconsideration, the Court confirms its Order of October 3, 1989. Defendant's motion for certification of an interlocutory appeal is herewith denied.

SO ORDERED.

---

5. 28 U.S.C. § 1292(b) provides in relevant part: When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order.