Marianne L. SINCLAIR

v.

Milo H. BRILL, et al.

Civ. No. 91–377–JD.

United States District Court,
D. New Hampshire.

Feb. 8, 1993.

Thomas P. Connair, Claremont, NH, for plaintiff.

David P. Slawsky, Concord, NH, for defendants.

## ORDER

DiCLERICO, Acting Chief Judge.

In this diversity action, plaintiff Marianne L. Sinclair seeks damages from defendants Milo H. Brill and Barbara D. Brill for their allegedly abusive behavior during most of the 1970s and, in particular, on one night in March 1972. The plaintiff's complaint is in three counts: assault and battery, negligence and intentional infliction of emotional distress. The court has jurisdiction over this action pursuant to 28 U.S.C.A. § 1332(a) (West Supp.1992). At this juncture, the defendants have filed two motions: one, for judgment on the pleadings pursuant to Fed. R.Civ.P. 12(c) (document no. 17), and the other, to seal the record in this matter (document no. 13). For the following reasons, the court denies both motions.

### Background

The complaint contains the following allegations. Marianne Sinclair was born on August 9, 1959. Her father deserted her family in 1963, and her mother died in 1970. After her mother's death, the Sullivan County Probate Court placed her under the guardianship of Milo Brill, her half-brother, and Barbara Brill, his wife. Mr. Brill, an Army medic, was stationed at Fort Devens, in Massachusetts, at the time.

On March 30, 1972, Ms. Sinclair lost a belt to her coat. By way of punishment, Mr. Brill made her kneel on a hard floor. Because she felt ill, Ms. Sinclair kept trying to get up but was continually beaten down with a belt. Mr. Brill eventually hog-tied her so she could not get up or move. He then gagged her with a dish towel so that the neighbors would not hear her screams. Shortly thereafter, Mr. Brill left the room. While he was gone, Ms. Sinclair vomited, aspirated her vomit, stopped breathing and lost consciousness. At the request of his wife, Mr. Brill returned to the room and applied first aid to restore Ms. Sinclair's breathing.

Afterward, Ms. Sinclair was taken to the emergency room at the Cutler Army Hospital at Fort Devens. She was later transferred to the Chelsea, Massachusetts Naval Hospital, where she remained until May 19, 1972. As a result of her injuries, she suffers from severe cortical blindness, an eyesight defect characterized by loss of peripheral vision, and a seizure disorder.

In addition to the March 30, 1972 incident, Ms. Sinclair claims she was the victim of other acts of abuse throughout the 1970s. For example, she states she was forced to wear a homemade chastity belt, made from a sanitary napkin wrapped in sandpaper. She states her genital area was covered with a nail-biting solution because she masturbated. She states she was often tied to her bed for long periods of time. She states she was also tied to a chair and beaten with a belt or a cheese board because she lied, was disrespectful and showed no respect for the property of others. Ms. Sinclair contends this type of punishment continued from 1970 until 1976, when she left the defendants' home.

Ms. Sinclair indicates her memories of these acts were repressed until she suffered a grand mal seizure in October 1988. When Ms. Sinclair previously had questioned the defendants about her medical condition, they told her that her blindness was caused by hysteria and that her seizures were caused by medication she received at Chelsea Naval Hospital. They subsequently told her that her seizures were hereditary. When Ms. Sinclair asked the defendants for her medical records, they told her the records had been destroyed by a fire. She finally obtained her medical records from the Veterans Administration in 1988 after she received Mr. Brill's

social security number. Ms. Sinclair filed this lawsuit in August 1991.

In their answer, the defendants admit the facts of the March 30, 1972 incident, but deny the plaintiff's characterization of those facts. They also deny the plaintiff's other allegations of abuse.

## Discussion

### A. Defendants' Motion for Judgment on the Pleadings

In reviewing the defendants' motion for judgment on the pleadings under Fed. R.Civ.P. 12(c), the court must accept all of the factual averments contained in the complaint as true and draw every reasonable inference helpful to the plaintiff's cause. *Santiago de Castro v. Morales Medina,* 943 F.2d 129, 130 (1st Cir.1991); *Rivera–Gomez v. de Castro,* 843 F.2d 631, 635 (1st Cir.1988). However, the court may not enter judgment on the pleadings " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.' " *Santiago de Castro,* 943 F.2d at 130 (citations omitted); *see also Rivera–Gomez,* 843 F.2d at 635.

The defendants argue the Massachusetts statutes of limitations should be applied to this lawsuit because the acts took place in Massachusetts. Under Massachusetts statutes, they contend, the plaintiff's claims are not timely. The plaintiff, however, argues the New Hampshire statutes of limitations should govern this action and, under those statutes, her claims are timely. The court agrees with the plaintiff.

### 1. Choice of Law

■ When the court, sitting in diversity, considers a case in which more than one state has an interest, it must determine which state's law to apply. To make this determination, the court sitting in New Hampshire must apply New Hampshire's choice of law rules. *See Klaxon v. Stentor Elec. Mfg.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *American Title Ins. Co. v. East West Fin. Corp.,* 959 F.2d 345, 348 (1st Cir.1992). Under New Hampshire law, the court must resolve potential

conflicts of law by first deciding whether the relevant law is substantive or procedural. *Keeton v. Hustler Magazine, Inc.,* 131 N.H. 6, 13, 549 A.2d 1187, 1191 (1988). If the court finds the relevant law is substantive, it must then determine whether the New Hampshire law actually conflicts with the laws of another interested state. *Id.* If the laws are in actual conflict, the court must choose which state's law to apply using a balancing test composed of five choice-influencing considerations: (1) the predictability of results; (2) the maintenance of reasonable orderliness and good relationships among the states in the federal system; (3) simplification of the judicial task; (4) the advancement of the governmental interest of the forum; and (5) the court's preference for what it regards as the sounder rule of law. *Id.* at 14, 549 A.2d at 1192 (citing *LaBounty v. American Insurance Co.,* 122 N.H. 738, 741, 451 A.2d 161, 163 (1982); *Clark v. Clark,* 107 N.H. 351, 353–55, 222 A.2d 205, 208–09 (1966)).

■ However, if the court finds the relevant law is procedural, it must apply New Hampshire law, the law of the forum state. *Id.* 131 N.H. at 13, 549 A.2d at 1191. The *Keeton* court noted that New Hampshire, like a number of other states, treats statutes of limitations as procedural. *Id.* at 12, 549 A.2d at 1190–91. However, the *Keeton* court acknowledged that statutes of limitation are distinguishable from other procedural rules because their principal purpose is the elimination of stale or fraudulent claims. *Id.* at 14, 549 A.2d at 1192. Nevertheless, the court emphasized that "the varied purposes that statutes of limitations are meant to serve justify the application of forum law, and thus the essential treatment of such statutes as procedural rules, in most instances, whether or not our choice of law principles advise application of New Hampshire substantive law." *Id.* In light of this analysis, the *Keeton* court concluded:

We believe that, in any case in which either party is a New Hampshire resident or the cause of action arose in this State, the sum of our above forum interests in applying our own statute, in combination with the benefit of simplification afforded by

regular application of our own rule, will tip the choice of law balance in favor of the application of our own limitations period to cases tried here. Thus, in such cases, our courts may typically apply the relevant New Hampshire statute without appeal to our choice-influencing considerations.

*Id.* at 15, 549 A.2d at 1192.

█ Applying the *Keeton* court's analysis to the facts of this case, the court's resolution of the choice of law issue becomes clear. Because the defendants are New Hampshire residents, the court must apply New Hampshire's statutes of limitations to the allegations in the plaintiff's complaint. The court need go no further. "We emphasize that we would not anticipate requiring a choice-influencing analysis in any case in which this State was either the domicile of one of the parties or the place where the cause of action arose." *Id.* at 21, 549 A.2d at 1196.

Nevertheless, the defendants argue the court should reject *Keeton's* clear mandate to apply New Hampshire's statutes of limitations to the facts of this case.

It is important to understand that the *Keeton* court *did not* set forth a rule that requires New Hampshire courts to automatically apply New Hampshire's statute of limitations. While recommending that New Hampshire limitation periods should govern the "typical" case, the *Keeton* court left it to the trial courts to decide how best to treat the rest. Marianne Sinclair's action is not the "typical" case....

Defendants' Motion for Judgment on the Pleadings at 6.[1] Because they contend this action is not "typical," the defendants urge the court to decide which law to apply by evaluating the five choice-influencing considerations. They argue that after this review, the court will be compelled to apply Massachusetts' statutes of limitation.

The court does not agree with the defendants that a choice of law analysis is required. Nevertheless, the court will evaluate the five choice-influencing considerations to provide a more complete explanation of the reasons for its position. *See Smith v. Morbark Industries, Inc.,* 733 F.Supp. 484, 487 (D.N.H.1990) (although not required, court undertakes choice of law analysis); *Keeton,* 131 N.H. at 17–21, 549 A.2d at 1194–96 (same). Even after this evaluation, however, the court concludes that New Hampshire's statutes of limitations apply to this action.

### (A) Predictability of Results

The court's concern for predictability of results is usually implicated in suits involving contractual or consensual transactions "in which it is important that parties be able to know in advance what law will govern a transaction so that they can plan it accordingly." *Clark,* 107 N.H. at 354, 222 A.2d at 208; *see also Keeton,* 131 N.H. at 17, 549 A.2d at 1194; *LaBounty,* 122 N.H. at 742, 451 A.2d at 163. Because no such transaction is at issue in this action, the court gives this factor no weight in its decision.

### (B) Relationship among the States

This consideration "requires only that 'a court not apply the law of a State which does not have a substantial connection with the total facts and the particular issue being litigated.'" *Keeton,* 131 N.H. at 18, 549 A.2d at 1194 (quoting *LaBounty,* 122 N.H. at 742–43, 451 A.2d at 164). The court recognizes that Massachusetts has a connection to this action as the acts at issue took place there. The court finds, however, that New Hampshire's interests are more substantial. The plaintiff was born and raised in New Hampshire. She went to Massachusetts only after the Sullivan County Probate Court named the defendants as her guardians. The defendants, in their petition to the probate court, indicated they were residents of Claremont, New Hampshire and that defendant Milo Brill was "temporarily residing" at Fort Devens. Finally, as the plaintiff emphasizes, most of the alleged fraudulent concealment

---

1. In prior cases, the court has recognized that "the New Hampshire Supreme Court left open the possibility that statutes of limitations question could be analyzed with reference to the [five-factor] choice-of-law analysis in the appropriate case." *Smith v. Morbark Industries, Inc.,* 733 F.Supp. 484, 486 (D.N.H.1990) (Devine, C.J.). However, as the *Smith* court noted, "New Hampshire's highest court has not yet identified that case, and this Court is not persuaded that the present case requires different treatment than *Keeton.*" *Smith,* 733 F.Supp. at 486.

by the defendants occurred while they were domiciliaries of New Hampshire. In sum, the court is persuaded that these considerations weigh in favor of applying New Hampshire law.

### (C) Simplification of the Judicial Task

The *Keeton* majority noted that, in the context of statutes of limitations, this factor compels the application of the forum law so as to "avoid undertaking the difficult or impossible task of discerning the weights that foreign legislatures have attributed to the interests underlying particular statutes of limitations." *Id.* 131 N.H. at 19, 549 A.2d at 1195. However, as there is no indication that applying Massachusetts' statutes of limitations would be overly difficult in the instant case, the court agrees with the *Keeton* dissent that "[o]n the third subject, the simplification of the judicial task, there is not much to be argued one way or another. While nothing could be easier than applying the forum's statute of limitations, no subject of foreign law could probably be ascertained with greater ease than a limitation period." *Id.* at 31, 549 A.2d at 1203 (Souter, J., dissenting). In sum, the court concludes this factor advocates neither in favor of applying New Hampshire law nor in favor of applying Massachusetts law.

### (D) Forum Interests

The *Keeton* majority indicated that New Hampshire has a substantial interest in applying its own statutes of limitations, which "generally stems from our concern to insure [sic] the orderly administration of our courts and to protect the respective interests of defendants and plaintiffs." *Id.* at 19, 549 A.2d at 1195. The majority also noted its inability "to discern the weights that other States accord their own interests relevant to the choice among statutes of limitations" compelled its decision to apply New Hampshire's statutes of limitations. *Id.* In light of the *Keeton* majority's analysis, the court concludes the forum's interests weigh in favor of applying New Hampshire's statutes of limitations.

Nevertheless, the court notes it would reach the same conclusion under the analysis advocated by the *Keeton* dissent. The dissent argued the evaluation of the forum's interests requires consideration of three different areas: (1) the state's relationship to the parties; (2) the in-state effect of the acts alleged in the complaint; and (3) the fact that the New Hampshire legislature saw fit to enact its statutes of limitations as one element in the state's system of justice. *Id.* at 31–32, 549 A.2d at 1203 (Souter, J., dissenting).

### (1) State's Relationship to the Parties

There is no question that New Hampshire has an interest in this action derived from its relationship with the defendants, residents of the state. Contrary to the defendants' arguments, though, the court believes that New Hampshire has an interest derived from its relationship with the plaintiff. The plaintiff's ties are stronger than the mere retention of New Hampshire counsel, as the defendants argue. *See* Defendants' Motion for Judgment on the Pleadings at 9. It was the Sullivan County Probate Court that determined the defendants were appropriate guardians for the plaintiff and allowed her to be moved to Massachusetts under their custody and care. The legal relationship between the plaintiff and the defendants was created in this state and by this state acting through a probate judge.

### (2) In–State Effect of the Acts Alleged in the Complaint

On this issue, the *Keeton* dissent noted "the State's sole and tenuous interest arising from the [libelous] publication itself would seem to have been a concern ... to protect its citizens from misinformation about a little-known outsider." *Keeton*, 131 N.H. at 32, 549 A.2d at 1203 (Souter, J., dissenting) (citation omitted). The state's interest in this case, however, is markedly stronger. New Hampshire has a valid interest in seeing that victims of child abuse, who substantiate their claims, are compensated for their injuries. This is particularly so when viewed in connection with paragraph (1) above. *See La-Bounty*, 122 N.H. at 743, 451 A.2d at 164 ("This State's paramount interest is to see

that accident victims receive some kind of compensation for their injuries.")

### (3) The Legislature's Enactment of Statutes of Limitations

The court agrees with the defendants that "[s]tatutes of limitations embody a dual policy against subjecting defendants to the trial of stale claims and against wasting the courts' time in their litigation." *Keeton*, 131 N.H. at 32, 549 A.2d at 1203 (Souter, J., dissenting). Nevertheless, the language of New Hampshire's statute codifies a "discovery rule," and therefore expresses the state's interest in allowing plaintiffs to file suit "when the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission...." N.H.Rev.Stat.Ann. § 508:4 (Supp.1991). This situation is precisely what the plaintiff alleges in the complaint. The state's interest would therefore be advanced by applying the New Hampshire statute.

In sum, the court concludes the forum's interests weigh in favor of applying New Hampshire law.

### (E) Sounder Rule of Law

As to the final consideration, the court is of the opinion that, under circumstances such as those presented in this case, applying New Hampshire's statutes of limitations reflects the sounder rule of law. The court does not agree with the defendants that "under any fair view of the limitation periods at issue, it would seem better to provide greater protection to New Hampshire citizens accused of tortious conduct from non-resident plaintiffs who wait almost two decades to file an action." Defendants' Motion for Judgment on the Pleadings at 11. New Hampshire's "discovery rule" contemplates suits, such as the plaintiffs', being filed beyond the typical three-year limitation period if the plaintiff's injury was not, or could not be, discovered until some time after the injury occurred. *See* N.H.Rev.Stat.Ann. § 508:4. Furthermore, the state has an interest in allowing this plaintiff a forum to prove her claims. She was born and raised in New Hampshire. The Sullivan County Probate Court named

the defendants as her guardians and allowed her to be taken to Massachusetts. Finally, the state's interest also contemplates allowing the defendants, New Hampshire residents, a forum in which to challenge the plaintiff's allegations. For these reasons, the court believes that applying New Hampshire statutes of limitations represents the sounder rule of law.

In conclusion, the court finds that its review of the five choice-influencing considerations compels the application of New Hampshire's statutes of limitations to the allegations of the plaintiff's complaint.

### 2. Statutes of Limitations

■ The plaintiff argues her claims are not time-barred because they are governed by New Hampshire's "discovery rule," which provides:

> ... when the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission, the action shall be commenced within 3 years of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of.

N.H.Rev.Stat.Ann. § 508:4. *See also Rowe v. John Deere*, 130 N.H. 18, 21, 533 A.2d 375, 376–77 (1987); *Raymond v. Eli Lilly & Co.*, 117 N.H. 164, 171, 371 A.2d 170, 174 (1977). The defendants concede that counts one and two of the plaintiff's complaint, which relate to the March 30, 1972 incident, are governed by the discovery rule "since plaintiff assertedly did not know and could not have known about them until she reviewed certain medical records in October 1988." *See* Defendants' Motion for Judgment on the Pleadings at 13. Thus, the court concludes the plaintiff's claims in counts one and two are not time-barred.

■ The parties disagree, however, as to whether the plaintiff's claim in count three is time-barred. On this point, the defendants advance three arguments. First, they contend the plaintiff's cause of action in count

three accrued between 1970 and 1976, the time of her alleged injuries. *See* Defendants' Motion for Judgment on the Pleadings at 12. Thus, the defendants argue the plaintiff had until 1982 at the latest to bring certain allegations contained in count three. *See* N.H.Rev.Stat.Ann. § 508:4 (1983).[2]

In their second argument, the defendants again contend the plaintiff's cause of action accrued at the time of the injuries alleged in count three. However, they argue the claim is time-barred under N.H.Rev.Stat.Ann. § 508:8 (1983 & Supp.1991). Section 508:8 provides: "An infant or mentally incompetent person may bring a personal action within 2 years after such disability is removed." Under New Hampshire law, the plaintiff was considered an infant until she turned eighteen on August 9, 1977.[3] The defendants argue the plaintiff therefore would have had until August 9, 1979 to bring the action. *See* Defendants' Motion for Judgment on the Pleadings at 12 n. 6.

In their final argument, the defendants assume the plaintiff may not have had the mental capacity to bring her count three claim until she experienced her grand mal seizure in October 1988. *See* Defendants' Reply to Plaintiff's Objection to Motion for Judgment on the Pleadings at 6. Nevertheless, the defendants contend the plaintiff's mental incapacity would have been removed at the time of the seizure. Thus, they argue that under N.H.Rev.Stat.Ann. § 508:8, the plaintiff would have had until October 1990 to bring her claim.[4]

However, the plaintiff counters that the allegations raised in count three of her complaint are governed by the discovery rule in N.H.Rev.Stat.Ann. § 508:4 (Supp.1991). She argues that the psychological trauma resulting from the defendants' acts caused her to repress the memory of these acts until her grand mal seizure in October 1988. The plaintiff thus contends she brought her allegations to the court within the discovery rule's three-year time limit.

The court agrees with the plaintiff that the allegations in count three are not, at this point in the proceedings, time-barred. When the court rules on a Rule 12(c) motion, its inquiry is limited. The court must focus not on "whether a plaintiff will ultimately prevail but whether [he or she] is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (motion to dismiss under Fed.R.Civ.P. 12(b)(6)). The plaintiff has presented sufficient allegations in the pleadings that she repressed until 1988 the memory of the acts of abuse alleged in count three of the complaint. Thus, the court must deny the defendants' motion because the plaintiff has alleged facts which may ultimately entitle her to a judgment. *See Santiago de Castro,* 943 F.2d at 130.

The court acknowledges the plaintiff has offered evidence outside the pleadings to support her claim that count three is con-

---

**2.** Before it was amended in 1986, New Hampshire's statute of limitations for personal injury actions read, in relevant part: "I. Except as otherwise provided by law, all personal actions, except actions for slander or libel, may be brought only within 6 years of the time the cause of action accrued." N.H.Rev.Stat.Ann. § 508:4 (1983).

**3.** *See* N.H.Rev.Stat.Ann. § 21:44 (1988).

**4.** In support of this argument, the defendants cite the decision of the Michigan Appeals Court in *Meiers–Post v. Schafer,* 170 Mich.App. 174, 427 N.W.2d 606 (1988). In *Meiers–Post,* the court considered whether the plaintiff's repression of her sexual abuse would constitute "insanity" for tolling purposes under Michigan's infants and insane persons statute of limitations, Mich.Comp. Laws Ann. § 600.5851 (West 1987 & Supp.1992).

*See Meiers–Post,* 427 N.W.2d at 608–09. However, the *Meiers–Post* court's analysis is not dispositive of the issue in this action.

In *Meiers–Post,* the plaintiff's claim was time-barred under Michigan's general three-year statute of limitations for personal injuries. 427 N.W.2d at 607. The Michigan statute, unlike the New Hampshire statute in this action, does not contain an explicit discovery rule. As a result, it appears the *Meiers–Post* court relied on its construction of the infants and insane persons statute of limitations to allow the plaintiff to bring her sexual abuse claims before a court. In this action, by contrast, the court is guided by the explicit language of New Hampshire's discovery rule. *See* N.H.Rev.Stat.Ann. § 508:4 (Supp. 1991). Therefore, there is no need to construe N.H.Rev.Stat.Ann. § 508:8 as the defendants urge.

trolled by the discovery rule.[5] The court expresses no opinion about this evidence as it inappropriate for the court to do so at this stage of the proceedings.[6] In their reply to plaintiff's objection to the motion for judgment on the pleadings, the defendants invite the court to consider Dr. Lindsay's affidavit. "[D]efendants have no objection to the Court's consideration of the additional facts and documents submitted by the plaintiff in her Objection to the Motion for Judgment on the Pleadings for the purpose of ruling on this Motion."[7] However, because the court reached its decision on the pleadings alone, the court declines to consider the information in the affidavit.

In sum, the court concludes the plaintiff is entitled to offer evidence that her claims are not time-barred. Therefore, defendants' motion for judgment on the pleadings is denied.

### B. Defendants' Motion to Seal File

■ The defendants have asked the court to seal the record in this case, arguing the plaintiff is sensationalizing her allegations in the media to pressure them and to gain strategic advantage in her suit. The plaintiff contends, however, that she is publicizing her allegations in the press to heighten public awareness of child abuse. Sealing the record in this action, she argues, would serve no public purpose and would deprive her of her First Amendment rights. Although it is not necessary for the court to reach the plaintiff's constitutional argument, the court agrees that no public purpose would be served by sealing the record in this case.

The court is guided by the United States Supreme Court's decision in *Nixon v. Warner Communications, Inc.*, where the Court reviewed the historical underpinnings of the public's access to judicial proceedings and to the written records contained therein. *See* 435 U.S. 589, 597–98, 98 S.Ct. 1306, 1311–12, 55 L.Ed.2d 570 (1978).

It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents.... American decisions generally do not condition enforcement of this right on a proprietary interest in the document or upon a need for it as evidence in a lawsuit. The interest necessary to support the issuance of a writ compelling access has been found, for example, in the citizen's desire to keep a watchful eye on the workings of public agencies ... and in a newspaper publisher's intention to publish information concerning the operations of government.

It is uncontested, however, that the right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes. For example, the common-law right of inspection has bowed before the power of a court to insure that its records are not "used to gratify private spite or promote public scandal" through the publication of "the painful and sometimes disgusting details of a divorce case".... Similarly, courts have refused to permit their files to serve as reservoirs of libelous statements for press consumption ... or

---

5. The plaintiff offered the affidavit of Philip G. Lindsay, M.D. with her objection to defendants' motion for judgment on the pleadings.

6. The First Circuit has held that motions to dismiss and motions for judgment on the pleadings are "not automatically transformed into a motion for summary judgment simply because matters outside the pleadings are filed with, and not expressly rejected by, the district court. If the district court chooses to ignore the supplementary materials and determines the motion under the [Rule 12] standard, no conversion occurs." *Garita Hotel Ltd. Partnership v. Ponce Fed. Bank*, 958 F.2d 15, 18 (1st Cir.1992).

7. The defendants concede that the court's consideration of information outside the pleadings

would convert their Rule 12(c) motion into a summary judgment motion under Fed.R.Civ.P. 56. *See* Fed.R.Civ.P. 12(c). However, the defendants note they are not prepared to argue the issues of this case under the summary judgment standard because they have not engaged in substantial discovery. Therefore, while they ask the court to consider the information in the affidavit, they also ask the court to reserve their right to engage in discovery on this issue and, if necessary, move for summary judgment. Because the court has not considered the affidavit, the defendants' Rule 12(c) motion has not been converted, and the defendants remain free to move at a later time for summary judgment under Rule 56.

as sources of business information that might harm a litigant's competitive standing.

*Id.* (citations and footnotes omitted); *see also In re Globe Newspaper Co.*, 920 F.2d 88, 96 (1st Cir.1990) (discussing the common-law right of access); *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 13 (1st Cir.1986) (same).

The *Nixon* Court, however, offered limited guidance to lower courts faced with disputes regarding access to the judicial process.

> It is difficult to distill from the relatively few judicial decisions a comprehensive definition of what is referred to as the common-law right of access or to identify all the factors to be weighed in determining whether access is appropriate. The few cases that have recognized such a right do agree that the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case.

*Nixon*, 435 U.S. at 598–99, 98 S.Ct. at 1312–13.

The court is not persuaded by the defendants' argument that the plaintiff is using these proceedings "to gratify private spite." *See Nixon*, 435 U.S. at 598, 98 S.Ct. at 1312. The court is not insensitive to the fact that this lawsuit has opened the door on one family's painful memories. But painful memories alone are not sufficient to justify sealing the record. "Judicial proceedings are not closed whenever the details are titillating, and open only when the facts are so boring that no one other than the parties cares about them." *In the Matter of Grand Jury Proceedings*, 983 F.2d 74, 78 (7th Cir.1992). Litigation necessarily takes place in a public forum.

Having reviewed the relevant facts and circumstances of this case, the court finds that the defendants have failed to present sufficiently compelling reasons to justify their request that the entire record be sealed. Absent such justification, the court will not withdraw from public scrutiny the judicial process that has occurred and will occur in this case.

What happens in the halls of government is presumptively open to public scrutiny. Judges deliberate in private but issue public decisions after public arguments based on public records. The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat; this requires rigorous justification.

*Grand Jury Proceedings*, 983 F.2d 74, 75.

The defendants' motion to seal is denied.

### Conclusion

For the foregoing reasons, defendants' Motion for Judgment on the Pleadings (document no. 17) and defendants' Motion to Seal File (document no. 13) are denied.

SO ORDERED.