Greuel v. Burlingame                    CV-92-378-L   03/06/95

**THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Robert J. Greuel

    v.                                    #C-92-378-L

Roger Burlingame

## ORDER

    Currently before the court is defendant, Roger Burlingame's motion for summary judgment.  Doc. 43.  For the reasons set forth below, the motion is denied.


BACKGROUND

    Prior to 1986, the plaintiff and an individual by the name of William C. Barnsley (Barnsley) owned several parcels of real estate as tenants in common in the towns of New Ipswich and Temple, New Hampshire.  On or around August 11, 1986, the plaintiff met with the defendant regarding ownership interests in the above mentioned properties.  Specifically, plaintiff indicated to defendant his concerns relating to personal liabilities to certain financial institutions for loans used to purchase these properties.  Following the August 11th meeting, plaintiff maintains the defendant undertook to represent him concerning the ownership of the New Ipswich and Temple, New Hampshire properties.  Pursuant to this representation, the plaintiff requested that the defendant prepare a plan protecting

and otherwise insulating plaintiff's assets from liability.  The defendant's work culminated on or around March 29, 1988, when the plaintiff and Barnsley signed an Agreement to Purchase and Sell Real Estate Interest (Agreement), whereby the plaintiff agreed to convey his interests in the real estate to Barnsley and Timberland Design, Inc., a New Hampshire corporation wholly owned by Barnsley.

Under the terms of the Agreement, the plaintiff received a mortgage which was subordinate only to any new financing obtained by Barnsley and Timberland Design, Inc. for certain parcels needing new financing.  In addition, the plaintiff was supposed to receive a first mortgage on those parcels which were part of the Agreement and which would not need to be used as security to acquire new financing.  Therefore, according to plaintiff, pursuant to the terms of the Agreement, plaintiff, as mortgagee, was entitled to receive either a first or second mortgage on every parcel conveyed to Barnsley and Timberland Design, Inc.

Early in 1989, the attorney-client relationship between the plaintiff and defendant terminated.  In August, 1989, as a result of a title search, the plaintiff learned for the first time that the mortgages held by him as mortgagee did not cover all the parcels conveyed by him under the Agreement and were in a secondary position, inferior to other mortgages, contrary to the

2

terms of the Agreement.

On July 20, 1992, plaintiff filed suit against defendant alleging breach of duty owed by defendant, negligent exercise of degree of care and skill by defendant and fraud.

Defendant now moves for summary judgment with respect to plaintiff's claim. Defendant moves for summary judgment on two theories. First, defendant maintains that because plaintiff cannot prove any damages in relation to defendant's actions, plaintiff is not entitled to any form of recovery. Second, defendant maintains that plaintiff's action is barred by the statute of limitations.

                          DISCUSSION

Summary judgment under Fed. R. Civ. P. 56(c) is proper only if, viewing the record in the light most favorable to the non-moving party, the documents on file disclose no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Jorge Rivera Surillo & Co. v. Falconer Glass Indus., 37 F.3d 25, 27 (1st Cir. 1994). "Only disputes over facts that might affect the outcome of the suit" are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.; Oliver v. Digital Equipment Corp., 846 F.2d 103,

3

105 (1st Cir. 1988). The moving party initially must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party has made the required showing, the adverse party must "go beyond the pleadings" and designate specific facts to demonstrate the existence of a genuine issue for trial. Fed. R. Civ. P. 56(e); Oliver, 846 F.2d at 105.

I.  Absence of Causation of Damages

As a threshold consideration, it is generally accepted within the judicial community that an attorney may be liable to his client for failure to properly record security instruments, including mortgages. 7 Am.Jur.2d, Attorneys at Law, Section 209-210 (1980). In order to recover for an attorney's negligence, the attorney's conduct "must have been necessary to produce the plaintiff's subsequent harm, without which the harm would not have occurred, and the (negligence) must have been a substantial factor, rather than a slight one, in producing it." North Bay Council v. Bruckner, 131 N.H. 538, 548 (1989); Pillsbury-Flood v. Portsmouth Hospital, 128 N.H. 299, 304 (1986). Further, the plaintiff has the burden of proving 1) the attorney-client relationship, or some other basis to establish the existence of a duty; 2) the attorney's neglect of a reasonable duty; 3) that

4

such negligence proximately resulted in and was the proximate cause of the loss to the client, where the issue of causation is susceptible to different results the issue is typically one of fact for the jury to decide. Witte v. Desmarais, 136 N.H. 178, 188 (1992); Pillsbury-Flood, 128 N.H. at 304.

Analogous to the above-mentioned principles, defendant offers to the court that basic tort law prohibits recovery "[w]here it cannot be shown with reasonable certainty that any damage resulted from the act complained of."  25 C.J.S. Damages § 27, at 683 (1966), cited approvingly in Witte v. Desmarais, 136 N.H. 178, 188 (1992).  Relying on this principle, defendant maintains that even if he had created and recorded all the mortgages to which the plaintiff now claims entitlement, plaintiff still would have lost his investment.  It is the defendant's position that any security interest plaintiff might have received under the Agreement was subject to pre-existing mortgages securing principal amounts well in excess of any likely fair market value for those parcels and, therefore, plaintiff could not reasonably expect his second mortgage status to protect his security interest should default occur.

Correspondingly, within his motion for summary judgment, the defendant attempts to qualify the significance and importance of plaintiff's statements, intentions and allegations by offering

5

that under the terms of the Agreement (1) plaintiff's mortgage was to be subordinate to any and all other existing mortgages on the properties, and (2) plaintiff agreed to subordinate his mortgage to any and all future mortgages Barnsley deemed desirable for the purpose of obtaining additional financing vis-a-vis the properties. Defendant further attempts to narrow plaintiff's allegations by offering that plaintiff voluntarily released his first mortgage on Lot 9A on or about November 10, 1988 so Barnsley could grant a mortgage to P & M Associates, thereby obtaining a secondary mortgage position. Moreover, according to defendant, the facts indicate that the Hillsborough Bank and Trust held a pre-existing lien on Lot 9A-5, granted in April, 1988. With respect to the parcels within Lot 7, First Service Bank for Savings had a mortgage lien as of December, 1987, thereby entitling plaintiff to a subordinate position due to the bank's mortgage preceding the Agreement. Finally, defendant points out that in May 1988 and April 1988, First Service Bank for Savings and Hillsborough Bank were granted $500,000 and $350,000 mortgage liens, respectively, on certain lots.

In summarizing the aforementioned facts, defendant contends that from whatever angle one chooses to evaluate and determine plaintiff's security position, plaintiff's interests were subordinate to all others. Thus, according to defendant, summary

6

judgment is appropriate because plaintiff cannot show with reasonable certainty that any damages actually and directly resulted from his conduct. The court does not agree.

Viewing the record in the light most favorable to the non-moving party (plaintiff), the court opines there are genuine issues of material fact to be resolved, as well as a reasonable possibility of attributing ascertainable damages to defendant's conduct. See Snow v. Harnischfeger Corp., 12 F.3d 1154 (1st Cir. 1993); Vasapolli v. Rostoff, 39 F.3d 27 (1st Cir. 1994); Morris v. Government Dev. Bank, 27 F.3d 746 (1st Cir. 1994); Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576 (1st Cir. 1994).

In the case at hand and of omnipotent importance to determining whether this motion for summary judgment should be granted, the court notes plaintiff's contention that he "made it quite clear . . . that he expected to have a first lien on certain properties, but did not, as a direct result of the Defendant's negligence." Doc. 44. Similarly, within deposition testimony, there are indications of plaintiff's intentions and expectations concerning his mortgage status. For example, during the course of a deposition conducted on April 1, 1994, the plaintiff offered the following responses to questions:

> Q:   . . . Did you contemplate in March of 1988 that you were going to be number one on any of this property?

7

A:   Oh, definitely.

Q:   Is the essence of your complaint that you weren't in
     number one position with regards to your mortgage?

A:   The essence of my complaint is that my interests were
     not covered, that the mortgage - by the end, the place
     I had mortgages I was not in number one position
anyplace, and if you're not in number one position,
then it's a worthless mortgage.  So my interest was not
     protected.


This evidence, when viewed in a manner amenable to
plaintiff's claim, is sufficient to warrant a finding that there
is a genuine fact concerning defendant's conduct, i.e. defendant
may have failed to properly record certain instruments or
defendant may have failed to notify plaintiff of the subordinate
nature of certain mortgages when there may have been a duty to do
so.

Although defendant offers a host of facts and explanations
concerning his relationship with plaintiff and the interests
plaintiff held, this court is persuaded that there is evidence to
warrant a reasonable conclusion that a causal link exists between
the defendant's act and the plaintiff's harm.  Fundamentally, if
the defendant had the duty to protect plaintiff's interest by
recording certain interests, then it is certainly foreseeable and
reasonable to expect that the failure of the defendant to so

8

record could result in recognized damages to plaintiff. Such damages are not speculative, but are in fact likely to be readily ascertainable by plaintiff. See <u>Fairhaven Textile, Corp. v. Sheehan, Phinney, Bass, & Green, Professional Asso.</u>, 695 F. Supp. 71 (D.N.H. 1988); <u>Clipper Affiliates, Inc. v. Checovich</u>, 138 N.H. 271 (1994).

Similar to the "causal link" discussion previously mentioned, although plaintiff himself admits that under the terms of the Agreement, he would receive a mortgage which would be subordinate to any <u>new</u> financing obtained by Barnsley and Timberland Design, Inc., there remains a substantial question whether there were properties which did not require new financing. If so, then under the terms of the Agreement, plaintiff should, seemingly, be entitled to a first mortgage on properties. Further, if plaintiff was entitled to a first mortgage on properties, then defendant's contention concerning the lack of damages suffered by plaintiff would be fallacious. At this juncture, the court is less concerned with exact amounts of damages suffered by plaintiff and is more concerned whether plaintiff reasonably can allege any form of damages resulting from defendant's conduct. Damages in tort must be proven "with as much certainty as the nature of the tort and the circumstances permit." <u>Clipper Affiliates, Inc.</u>, 138 N.H. at 274.

9

Recognizing the genuine issues presented in this case and the possibility of ascertainable damages, the court will not subscribe to defendant's notion that plaintiff has suffered no damages directly resulting from defendant's conduct.

II.  Statute of Limitations

Defendant next contends he is entitled to summary judgment because the statute of limitations period bars plaintiff from recovering.  In support of this contention, defendant maintains that New Hampshire Revised Statute Annotated 508:4 establishes a three-year period of limitation on all personal actions occurring after July 1, 1986.  Defendant asserts that because the Agreement under which plaintiff predominantly seeks relief expired on September 30, 1988, plaintiff had until September 30, 1991 to bring his action.  Thus, according to defendant, because plaintiff did not bring his action until July 22, 1992, well after the three year limitation period had run, plaintiff is not entitled to continue this suit and summary judgment is appropriate.

As indicated by N.H.R.S.A. 508:4,

> I.  Except as otherwise provided by law, all personal actions . . . may be brought only within 3 years of the act or omission complained of, except that when the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or

10

> omission, the action shall be commenced within 3 years of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of.

See also McLean v. Gaudet, 769 F. Supp. 30, 31 (D.N.H. 1990).

The statute of limitations is a procedural matter and the specific point at which a cause of action accrues is a judicial determination. Sinclair v. Brill, 815 F. Supp. 44, 46 (D.N.H. 1993); University System of New Hampshire v. United States Gypsum Co., 756 F. Supp. 640 (D.N.H. 1991). Under R.S.A. 508:4, an action is deemed to have accrued when a plaintiff discovers or in the exercise of diligence should have discovered his injury and that injury may have been caused by the defendant. McLean, 769 F. Supp. at 31. "Whether the plaintiff did in fact exercise reasonable diligence is a question of fact." Black Bear Lodge v. Trillium Corp., 136 N.H. 635, 638 (1993). The question of whether a plaintiff should have discovered that the allegedly unlawful conduct of a defendant caused injury can be decided following a plenary scan of a fully developed record. See Johnson v. Johnson, 701 F. Supp. 1363, 1370 (N.D.Ill. 1988) ("The point at which the statute of limitations commences under the discovery rule is a question of fact."). Further, if there are sufficient facts sufficient for a jury to decide that a plaintiff discovered his injury and sued a defendant within the limitations

11

period then summary judgment must be precluded.  <u>Hildebrand v.</u> <u>Hildebrand</u>, 736 F. Supp. 1512, 1522 (S.D.Ind. 1990).

In the case at hand, plaintiff repeatedly has stated that he did not learn of the improper recording of the mortgages until August, 1989.  The court opines that a reasonable person, in plaintiff's situation, would likewise not have discovered or anticipated injury anytime previous to plaintiff's discovery.  If the court subscribed to defendant's assertion that plaintiff should have been aware of his injury on or around September 30, 1988, such a recognition would likely create a catch-22 for legal clients.  On the one hand, a client not versed in legal matters may, in employing legal counsel, reasonably defer to the legal expertise and judgment of his lawyer and expect his representative to zealously and prudently represent certain concernments.  However, on the other hand, this same client, faced with the possibility of having any malpractice claims barred by the limitations period, would nonetheless have to frequently scrutinize and review the attorney's work to insure the attorney has adequately and reasonably provided representation.  Naturally, requiring a client to perform this latter type of scrutiny would be absurd.  After all, a client cannot reasonably be expected to serve as, both, a shepherd and a member of the flock.  The better approach, and the one adopted by

12

R.S.A. 508:4, is to view plaintiff's action under a reasonable person standard and determine when a reasonable person, exercising diligence, would logically have discovered his injury.

As the plaintiff points out, he only became aware of his injury, resulting from defendant's conduct, in August 1989 following consultation with another attorney. It was during this consultation that the other attorney pointed out the subordinate nature of plaintiff's mortgages. Up to that point, plaintiff had no reason to believe defendant's actions were anything but zealous and prudent representation. Given this evidence and the determination that plaintiff's actions comport with those of a reasonable person, the court opines that the limitation period began to run in August, 1989, the date plaintiff became aware of his situation. Due to the fact the plaintiff filed suit against defendant in July, 1992, plaintiff's claim is not barred by the applicable limitations period.

CONCLUSION

Viewing the record in a light most favorable to the plaintiff, the documents presented to the court disclose genuine issues of material facts. Fundamentally, according to plaintiff's complaint, deposition, etc., there are issues presented concerning entitlement to first mortgages on certain property and whether the entitlements or interests were

13

adequately understood, protected and recorded by the defendant. Therefore, as there are genuine issues of material fact in need of resolution, summary judgment must be denied.

Additionally, based on plaintiff's complaint and subsequent documents submitted by the parties, there are substantial indications that plaintiff did not become aware of the effects of defendant's conduct until August, 1989. This being the case, plaintiff's claim is not barred by the statute of limitations and summary judgment on this issue must likewise be denied.

In light of the aforementioned discussion, defendant's motion for summary judgment (Doc. 43) is denied.

March 6, 1995

_____
Martin F. Loughlin
Senior Judge

William Saturley, Esq.
Paul J. Haley, Esq.